JOHN GULLY COLE et al., PHILLA OLDS COLE et al., Appellants, v. PARKER-WASHINGTON COMPANY et al.

JOHN GULLY COLE et al. v. PARKER-WASHINGTON COMPANY, Appellant.

In Banc, December 19, 1918.

1. **PARTITION: Interlocutory Decree: Motion for New Trial.** If a motion for a new trial is timely filed after final decree in a partition proceeding is rendered, and it embraces alleged errors occuring during the trial prior to the rendition of the interlocutory decree, such errors are reviewable on appeal. If an appeal is taken from the interlocutory decree, without awaiting the final decree, it is necessary that a motion for a new trial be then filed, in order that rulings leading up to it may be reviewed; but if an appeal is not then taken, but the aggrieved party waits until final decree is rendered, he may file one motion for a new trial embracing all rulings made before and after the interlocutory decree was rendered, and if such motion is overruled he may, upon his appeal, have all rulings made at any time during the trial reviewed in the appellate court.

2. **DEATH OF PARTY: Abatement: Suggestion of Death.** At common law the death of a party to an action before judgment, whether served with process or not, permanently abated the suit, and could not be revived against his representatives or successors in interest; and this common-law rule has not been modified by the statutes except in the limited way mentioned in them (Secs. 1916, 1921, 1922 and 1923, R. S. 1909), and they provide for revivor only upon a suggestion of the death of the party within a designated time.

3. ———: **Suggestion: By Whom Made.** The statutes do not in express terms designate the person whose duty it is to suggest the death of a party to an action, but the Legislature evidently intended that any one interested in the suit could make the suggestion, for the reason that the death of either plaintiff or defendant abated the action at common law.

4. ———: **Time for Making Suggestion: Collateral Attack.** The statute does not prescribe the time when the death of a party to an action shall be suggested to the court, but its evident intention is that the suggestion must be made on or before the day the cause is set for trial, if his death is then known, but if unknown and

the trial proceeds to judgment without such suggestion, a judgment against him if he died before verdict is void, and can be attacked collaterally.

5. ———: Judgment: Before and After Verdict. If either party die after verdict, judgment may be entered in the name of the original parties within one term after the verdict; but if a party die before verdict against him, no judgment can be rendered against him, but the verdict is void.

6. ———: ———: After Service of Process. A judgment on special tax bills, rendered after service of process, whether by personal service or order of publication, against a defendant who died prior to the return day of the writ, was void, and the execution sale of the property thereunder and the sheriff's deed were likewise void, and can be shown to be void, by collateral attack, in a subsequent suit in partition between the purchaser at the execution sale and the heirs or devisees of the decedent. [Following and approving Sargeant v. Rowsey, 89 Mo. 617, and overruling Coleman v. McAnulty, 16 Mo. 173, and all subsequent cases following it and announcing the same views, as contrary to and out of harmony with Secs. 1916, 1921, 1922, 1923, R. S. 1909.]

7. TERM OF COURT: One Day: Fiction. The fiction of the English courts that a term of court is within the contemplation of the law but a single day, has no place in the jurisprudence of Missouri.

8. DEATH OF PARTY: Judgment: As to Heirs: No Suggestion of Death. A judgment, rendered against a defendant who died after service of process, but before the return day of the writ or appearance, and consequently before verdict, is void as to him; and if his death was not suggested to the court and the cause revived against his representative or successor in interest, it is likewise void as to his heirs or devisees.

9. ———: Judgment Before Verdict: Service Upon Devisee: Dower Alleged: Title Sold. In a suit upon special tax bills plaintiff alleged that three brothers owned the lots as tenants in common, and that the wife of one of them, who was joined as a defendant, claimed some interest in the lots. Both she and her husband were timely served with process, and, notwithstanding his death before verdict, judgment, without any suggestion of his death or attempted revival of the action, was rendered against all defendants, and the sheriff's deed attempted to convey the entire interests of all to the purchaser. *Held*, first, that the legal conclusion to be drawn from the allegations is that the wife owned only an inchoate right of dower; *second*, that, the service of the petition, which sought to extinguish her inchoate dower, and the judgment against her, being void as to her husband, did not bind her interest in the lots acquired by his will, but was void as to her, also, both as to her dower and her devise.

10. **JUDGMENT: Effect Upon Interest Acquired After Suit Brought.**
A judgment does not bind the interest of a defendant acquired
after suit is brought, but only the interest proceeded against
under the petition as filed, unless, after the larger or different in-
terest is acquired, the petition is amended and an *alias* writ is
issued and served. Where in a suit on special tax bills it was
alleged that three brothers as cotenants owned the lots and they
alone were joined as defendants, and after service of process upon
them and the wife of one of them he died before the return day
of the writ, leaving a will by which he devised his undivided one-
third interest in the lots to his wife and son, a judgment against
him and a sale under execution of his and his wife's interest did
not affect the interest of the wife or son acquired by the will, but
the only way the interest of either acquired after the institution
of the suit could have been bound was by a suggestion of the
testator's death, the filing of an amended petition stating their
after-acquired interest, and the issuance and service of an *alias*
writ upon them.

11. **PLEADING: Failure to State Cause of Action.** The statute re-
quires "a plain and concise statement of the facts constituting a
cause of action," and a petition in a suit to enforce special tax
bills which simply states that a named defendant "claims some
interest in each of the within described tracts" states a mere
conclusion, and does not state a cause of action.

12. ———: ———: **Collateral Attack: Failure to Follow Express Stat-
ute.**
*Held,* by WOODSON, J., that a valid judgment cannot be rendered
upon a petition which does not state facts sufficient to consti-
tute a cause of action, since the court does not obtain juris-
diction of the subject-matter, and such judgment being a
nullity it can be shown to be void in a collateral proceeding.
*Held,* by BOND, C. J., with whom a majority of the judges con-
cur, that a judgment of a court of general jurisdiction having
the parties before it and having power to determine the
class of causes for which relief is prayed is not void and
is not open to collateral attack.
*Held,* by FARIS, J., with whom WILLIAMS, J., concurs, that a
petition in an action to enforce the lien of special tax bills
which states nothing more than that a named defendant
"claims some interest in each of the within described tracts
of land," but does not properly describe the land, does not
state a cause of action, and the judgment is a nullity, and
can be successfully attacked in collateral proceeding; but
when the defendants are in court by proper service and juris-
diction has attached by proper description of the lands against
which the lien is sought, and by a compliance with all stat-
utory requirements as to what allegations the petition in the
class of cases shall contain, the judgment foreclosing the

tax lien is immune from collateral attack. The court does not have jurisdiction in any case if the *res* is not in court, nor if the petition fails to follow express statutory requirements; but if these two conditions are met, and the party is brought into court by proper service, the judgment cannot be successfully attacked in any subsequent collateral proceeding.

13. **ORDER OF PUBLICATION: Known Parties: Sec. 580, R. S. 1899.** Section 580, Revised Statutes 1899, does not authorize an order of publication for defendants named in the petition and who are therefore known.

14. ———: ———: **Allegations in Petition and Order: Sec. 575, R. S. 1899.** If the petition in a suit to enforce a lien against real estate names the defendants and states that they are non-residents and that ordinary process of law cannot be served on them on that account, Section 575, Revised Statutes 1899, makes mandatory the issuance of an order of publication. It is the order itself, and not the petition, that must state "briefly the object and general nature of the petition."

15. ———: ———: **Jurisdiction of Person: Judgment for Different Interest in Res Than Alleged.** Even though an order of publication "briefly stating the object and general nature of the petition" is sufficient to bring named defendants into court, the judgment cannot dispose of their interest in the land acquired after its issuance, but a judgment which attempts to bind such after-acquired interest is void, because the court had no jurisdiction of the *res* or subject-matter.

16. ———: **Jurisdiction of Person: Unknown Heirs.** A petition which alleges that a certain person, "named in each of the within mentioned tax bills as one of the owners of the within described lots, is deceased, and that his interest has passed to his heirs, and that plaintiff after diligent search could not discover and is unable to insert the names of said heirs or what interest each may have," and an order of publication directed to them as "unknown heirs" of said owner, describing the lots and the nature and purposes of the suit, is sufficient to give jurisdiction over the persons of such unknown heirs and of the subject-matter, and a judgment which enforces a lien on only the interest they had acquired before the petition was filed is binding upon them and their said interest.

Appeal from St. Louis City Circuit Court.—*Hon. Leo S. Rassieur*, Judge.

REVERSED AND REMANDED (*with directions*).

R. M. *Nichols* for Philla Olds Cole et al., appellants, and Anna E. Sands et al., respondents.

(1) Under the common law the death of a party abates the suit. Our statute saves that abatement until and during the third term after the death for revival in the name of the legal representatives, in all cases where such suit would survive; but if not revived on or before the third term, the action abates as to the party, and the interest of his representatives and successors; James W. Cole died June 5, 1907, before the return day (June 10, 1907) of the order of publication, and the judgment rendered against him February 20, 1908, without such revival and against the positive prohibition of Sec. 1923, R. S. 1909, although served by publication and constructively in court, is a nullity. R. S. 1909, secs. 1916, 1921, 1923; Sargent v. Rowsey, 89 Mo. 618; Murphy v. Redmond, 46 Mo. 317; Rentschler v. Jamison, 6 Mo. App. 135; Weiler Mfr. Co. v. Eaton, 81 Mo. App. 657; Childers v. Schantz, 120 Mo. 305; Adams v. Gossom, 228 Mo. 566; In re Young's Estate, 116 Pac. (Ore.) 1060; Life Assn. of America v. Fassett, 102 Ill. 315; Bevens v. Henderson, 86 N. E. (Ind.) 428; Kager v. Vickery, 49 L. R. A. 153, and note. (2) The writ was not returnable until June 10, 1907, the first day of the term. The defendant James W. Cole had until that day to make return. His death on June 5th suspended the service and the command of the writ until his "representatives or successors" were appointed, and the judgment rendered without bringing in his "representatives or successors" and while said service was suspended is absolutely void. In re Young's Estate, 59 Ore. 362, 116 Pac. 1060, 27 Am. & Eng. Ann. Cas., 1311; McBride v. Railway, 19 Ore. 64, 23 Pac. 814; Reilly v. Hart, 130 N. Y. 625, 29 N. E. 1099; Wilson v. Darrow, 223 Mo. 521; Weiss v. Aaron, 75 Miss. 135, 65 Am. St. 594. (3) The petition does not state a cause of action against Wm. T. Cole (son of Robert S. Cole) and Philla Olds Cole (widow of James W. Cole). The allega-

tion is that they "claim some interest in each of the different described tracts of land." The allegation of title is that "James W. Cole, John J. Cole and the unknown heirs of Robert S. Cole, deceased, are the owners of the real estate." The judgment by default is therefore void as against them. 21 Ency. Pl. & Prac. p. 712; 23 Cyc. 740; Carpenter v. Guenther, 215 Mo. 562; Clark v. Holmes, 120 Pac. (Okla.) 642; Schueler v. Mueller, 193 Ill. 402, 61 N. E. 1044. (4) The judgment is absolutely void as a judgment against the unknown heirs of Robert S. Cole, deceased, who are Wm. T. Cole, Sarah J. Ridpath, Anna E. Sands and Mary Cole Palmer, for the reason that the petition does not allege, and the order of publication does not set forth, "that it [plaintiff] verily believes there are persons interested in, or who claim to be interested in, the subject-matter of the petition, whose names he cannot insert therein because they are unknown to him," and for the further reason that the petition does not "describe the claims or interests therein of such unknown parties, and how such claims or interests are derived, so far as known to him." R. S. 1909, sec. 1776; Davis v. Montgomery, 205 Mo. 272; Land & M. Co. v. Land & C. Co., 187 Mo. 420; Petts v Staley, 76 Mo. 158.

*Barclay, Orthwein & Wallace* for Parker-Washington Company, respondent and appellant.

(1) The points made by appellants are not reviewable so far as relates to proceedings at the first trial of the cause. Unless a motion for a new trial was duly and seasonably filed, after the proceedings leading to the interlocutory findings and judgment in partition, those proceedings cannot be reviewed upon a motion for new trial filed at a later term, after the final judgment. Only points made by a motion for new trial are available to reach supposed errors occurring at a former trial. Green v. Walker, 99 Mo. 68; Brady v. Connelly, 52 Mo. 19; Hatcher v. Moore, 51 Mo. 115;

Vineyard v. Matney, 68 Mo. 105.   And the interlocu-
tory decree is itself a subject for a separate appeal, if
desired; though such appeal is not imperative, if due
steps are taken to preserve the review of the proceed-
ings and evidence on which the same is based.  R. S.
1909, sec. 2038.  But if they are not taken, those pro-
ceedings are no longer reviewable (outside the record
proper) Padgett v. Smith, 206 Mo. 311; Richardson v.
Schuyler Co. Assn., 156 Mo. 407.  (2) No motion for
new trial was filed by plaintiffs (or by any of them)
after the interlocutory trial and finding adjudging the
rights of the parties in the land to be partitioned; and
a motion after the final order of distribution was too
late to bring into review the proceedings before the
interlocutory judgment in partition.  Windes v. Earp,
150 Mo. 600; Ess v. Griffith, 128 Mo. 50; Richardson v.
Schuyler Co. Assn., 156 Mo. 407.  (3) A judgment ob-
tained upon process duly executed is valid, although the
defendant may have died during the proceedings and
before judgment.  Colman v. McAnulty, 16 Mo. 175;
Bank v. McWharters, 52 Mo. 34; State ex rel. Ozark
Co. v. Tate, 109 Mo. 265.  (4) Where a party dies after
suit is brought, the judgment may not be successfully
attacked collaterally, and this especially where the
court has jurisdiction of both *res* and the person.  The
last insertion of the publication in this case was May 18,
1907.  James W. Cole died June 5, 1907.  The court had
jurisdiction of both the *res* and the person before James
W. Cole died, which was far more than was necessary
to give same validity as against collateral attack.  State
ex rel. Potter v. Riley, 219 Mo. 687; Gundy v. Cooper,
77 Mo. App. 354.  (5) Even where publication is not
complete, but the court has jurisdiction and control of
the *res* (as in an attachment) and a party interested
dies during the pendency of the suit, and without court
action thereon, the judgment is not void and cannot be
defeated collaterally.  Shea v. Shea, 154 Mo. 601.  (6)
The former decree (which plaintiffs here seek to attack
collaterally) contains a recital that the process was duly

served in that case by publication. It has been well settled in this State that where a judgment recites publication as having been duly made according to law, it can only be attacked "in a direct proceeding instituted for that purpose and it cannot be assailed collaterally." Brawley v. Ranney, 67 Mo. 283; Kane v. McCown, 55 Mo. 200; Johnson v. Gage, 57 Mo. 165. (7) When the order of publication complies substantially with the statue, it is not subject to be successfully impaired collaterally. Jasper Co. v. Wadlow, 82 Mo. 179. (8) Where jurisdiction exists, irregularities, or even substantial errors, are unavailing when brought forth collaterally, if the court has jurisdiction. Rosenheim v. Hartsock, 90 Mo. 365; Burke v. City, 118 Mo. 309; Union Depot v. Frederick, 117 Mo. 138; State v. Miller, 110 Mo. App. 542. (9) The imperfect statement of a cause of action does not deprive the court of jurisdiction to proceed. It is an error which will be disregarded when a judgment ensues, assuming always that there are sufficient facts to show the court had jurisdiction of the subject-matter. Furthermore, the cause of action in this case was a suit to enforce a lien on a special tax bill against certain property and did not have to state what the exact interest of each defendant was, in order to state a cause of action, as the purpose of making parties defendant is merely to notify them of the enforcement of the lien and give them an opportunity to show why the lien is not valid, but does not contemplate a personal judgment against them. Rosenheim v. Hartsock, 90 Mo. 365; State v. South Ry. Co., 100 Mo. 59; Shea v. Shea, 154 Mo. 601; St. Louis v. Oeters, 36 Mo. 456; Anderson v. Holland, 40 Mo. 600. (10) Non-residents may be served by publication under Sec. 1770, R. S. 1909. Unknown parties are served under Sec. 1776, R. S. 1909, and the requirements of the two sections differ. Section 1770 requires "the setting out, briefly, the object and general nature of the petition." Section 1776 requires the setting out "how such claims or interests are derived so far as is known to

him." The petition and order of publication in the tax-bill suit was sufficient under both those sections, because the petition stated the general nature and object and described the interest of the unknown parties as far as was known to plaintiff, which is all the law demands or could demand of a plaintiff. R. S. 1909, secs. 1770, 1776.

WOODSON, J.—This suit was instituted in the circuit court of the city of St. Louis by the plaintiffs against the defendants to partition three lots of ground situate in said city. The decree of partition was in favor of the plaintiff John Gully Cole, and against the plaintiffs Philla Olds Cole and James Gilbert Cole, and partially for and partially against the defendant Parker-Washington Company, and in favor of the defendants Anna E. Sands, Sarah J. Ridpath and Mary Cole Palmer.

Those against whom the decree was rendered duly appealed the cause to this court.

The Parker-Washington Company (which for brevity will hereinafter be designated as the Company) bases its claim of interest in and to the lots through a sale by execution had under a judgment rendered in a suit brought by it April 27th, 1907, on special tax bills issued against said lots, which will be presently described.

Prior to the bringing of said suit the three lots were owned by John J. Cole, James W. Cole and Robert S. Cole, brothers, in common, each owning a one-third undivided interest therein.

Robert S. Cole died in the year 1900, leaving surviving him five children, William T. Cole, Minnie Cole Conway (who sold her interest to William T. Cole), Sarah J. Ridpath, Anna E. Sands and Mary Cole Palmer, who inherited their father's share in said lots.

James W. Cole died June 5, 1907.

The suit on the tax bills, as previously stated, was filed April 27, 1907, returnable to the June term, 1907, of the court. The defendants in that suit were

John J. Cole, James W. Cole, Philla Olds Cole his wife, William T. Cole, and the unknown heirs of Robert S. Cole. Personal service was had upon John J. Cole, and service by publication was obtained against the other defendants, and those specifically named were alleged to be non-residents, and the unknown heirs of Robert S. Cole were alleged to be unknown parties. The last insertion of the order of publication was on May 18, 1907, about one week before the death of James W. Cole. The latter by will divided his one-third interest in the lots to his widow, Philla Olds Cole, and his son, James Gilbert Cole, in equal parts.

In February, 1908, the Company obtained a judgment on the tax bills, aggregating something over $900, against the lots mentioned. Subsequently, said judgment, on appeal, was affirmed as to two-thirds interest in said property, but not against the one-third interest of John J. Cole, and in due course the Company advertised and sold said property under said judgment, and at the sale the Company was the highest bidder and purchased the two-thirds interest so sold.

In this partition cause, the trial court awarded the interests of Jas. W. Cole (which of course, included his wife, Philla Olds Cole, and his son, James Gilbert Cole) and also the interest of William T. Cole, to the Parker-Washington Company, but awarded the interest of Sarah J. Ridpath, Mary Cole Palmer and Anna E. Sands, sued as unknown heirs, to them, on the theory that the order of publication was insufficient to bind them.

Such other facts of the case as may be necessary for a proper disposition of the case will be noticed in appropriate places in the opinion.

I. Counsel for the Company first insists that Philla Olds Cole and James Gilbert Cole are in no position to urge the errors complained of by them, for the reason that they occurred during the trial and prior to the

Motion for New Trial.
rendition of the interlocutory judgment ordering the partition of the lots and were not called to the attention of the trial court at that time by a motion for a new trial, but at a later term by such motion filed within four days after the rendition of the final decree in the case.

In support of this insistence we are cited to the following cases: Green v. Walker, 99 Mo. 68; Brady v. Connelly, 52 Mo. 19; Hatcher v. Moore, 51 Mo. 115; Vineyard v. Matney, 68 Mo. 105.

None of these cases support the proposition presented for decision; in the first and third there was no motion for a new trial filed in the cause at any state of the case, and in the second and fourth, while a motion for a new trial was filed, yet the errors complained of in this court were not called to the attention of the trial court in the motion for a new trial.

Under those facts this court correctly ruled in all of those cases that the errors complained of were not reviewable by this court. But in the case at bar a motion for a new trial was timely filed after the rendition of the final judgment in the case, and that is the only motion for a new trial the statutes of this State and the practice thereunder require to be filed, without it can be said that the statute requires a motion for a new trial to be filed within four days after the rendition of an interlocutory judgment where the party who deems himself aggrieved thereby desires to appeal therefrom. In my opinion the statute requiring a motion for a new trial to be filed within four days after the rendition of the judgment applies to an interlocutory decree when it is to be appealed from the same as it does to a final judgment when it is to appealed from, but in neither case when no appeal is to be taken. The reason for requiring the motion to be filed in the one case is just the same as in the other, viz., to call the attention of the trial court to its own errors. But there is no reason for requiring such a motion to be filed to an interlocutory decree, if no appeal is to be taken therefrom prior to

the rendition of the final judgment. The right to appeal from an interlocutory decree is purely optional with the party who feels himself aggrieved thereby; that is the express provision of the Section 2038, Revised Statutes 1909, but he is not bound to so do in order to preserve his right to have this court review the rulings of the trial court on appeal from the final judgment, provided he then calls the trial court's attention to the errors complained of by a motion for a new trial; this is expressly provided for by said Section 2038 in the following language:

"But a failure to appeal from any section or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case."

In the light of this statute there is no rhyme or reason for filing a motion for a new trial upon the rendition of an interlocutory decree unless the aggrieved party wishes to appeal the cause to this court. There has been some unguarded language used in some of the cases, which, if not read in the light of this statute, might lead one to believe this court has committed itself to the proposition that none of the proceedings of the trial court had prior to and including the rendition of interlocutory decree could be reviewed by this court unless a motion for a new trial is filed within four days thereafter.

But be that as it may, all such cases, if there be any announcing a contrary rule, are hereby overruled.

We therefore decide this insistence against the Company.

II. Counsel for plaintiffs contend that since the record in this case discloses the fact that James W. Cole died June 5, 1907, after service of process upon him in the tax suit mentioned and about five days prior to the return day of the writ, which was June 10, 1907,

and some eight months before the date of
**Judgment Against Deceased Defendant.** the trial and rendition of judgment, which was February 20, 1908, without having that suit revived against his heirs or representatives
on or before the third term of the court after
his death occurred, the cause permanently abated and
the judgment rendered therein is, as a matter of law,
under Sections 1916, 1921, 1922 and 1923, Revised Statutes 1909, utterly void as to his devisees, Philla Olds
and William J. Cole, and cite in support of that proposition the following cases: Sargeant v. Rowsey, 89 Mo.
617; Murphy v. Redmond, 46 Mo. 317; Rentschler v.
Jamison, 6 Mo. App. 135; Weller Mfg. Co. v. Eaton,
81 Mo. App. 657; Childers v. Schantz, 120 Mo. 305;
Adams v. Gossom, 228 Mo. 566; In re Young's Estate,
116 Pac. (Ore.) 1060; Life Assn. of America v. Fassett, 102 Ill. 315; Bivens v. Henderson, 86 N. E. (Ind.)
426; Kager v. Vickery, 49 L. R. A. 153 and note.

Section 1916, so far as material provides: "No
action shall abate by the death of a party, . . . if
the cause of action survive or continue. In case of
death . . . the court on or before the third term
after the suggestion of such death . . . may, on
motion, order the action to be continued by or against
the representative or successor of such party in interest,'' etc.

Section 1921 provides: "In all cases where the
representatives of the deceased or disabled party shall
not be made parties according to the provisions of this
article, on or before the third term after the suggestion
of the death or disability, the action shall abate as to
such party and the interest of his representatives or
successors therein,'' etc.

Section 1922 provides: "After a verdict shall be
rendered in any action, and after an answer of confession in any suit brought, if either party die before
judgment be actually entered thereon, the court may,
within one term after such verdict or answer, enter final
judgment in the name of the original parties."

Section 1923 provides: "Nothing in the preceding section shall be construed to authorize the entry of a judgment against any party who shall have died before a verdict is actually rendered against him notwithstanding he may have died on the first or any other day of the term at which such verdict shall have been rendered, but such verdict shall be void."

In the consideration of this case it must be borne in mind that under the common law the death of a party to a suit, whether served with process or not, permanently abated the suit, and it could not be revived against his representatives or successors in interest. This proposition, and the authorities supporting it, will be fully considered later.

The sections of the statutes just mentioned are plain and unambiguous. The first provides that no action shall abate (which it did at common law) on account of the death of a party to a suit, etc., and that in case of death the court, on or before the third term after the suggestion of such death, may continue the case against the representative or successor of such party. This language clearly shows that it was not the intention of the Legislature that the suit should be prosecuted and judgment rendered against a dead man any more than it could be done at common law, but could be against his representatives or successor in interest.

The second section quoted clearly provides that where the representative or successor of the deceased party has not been made a party on or before the third term of the court after the suggestion of the death, as previously stated, the action shall abate as to such party and the interest of his representatives or successors therein. This section clearly provides that the suit shall abate as to the dead party and to the interest of his said representatives and successors, if not revived against them on or prior to the said third term of said court. In other words, it was the intention of the Legislature that no dead man should be bound by a

judgment rendered against him after death, or against his estate without his representative or successor should be made a party, as previously stated.

This was the common-law rule, pure and simple, except these statutes give the survivor the right to bring in the representatives or successors of the deceased on or before the expiration of the third term of the court after the suggestion of death had been made, and where no suggestion of death is made when the cause is called for trial the same abates as at common law.

In order to make this matter doubly clear, the Legislature by the third section quoted, that is, Section 1923, in express terms defined what is meant by the enactment of Section 1922. It provides' that nothing contained in the preceding section shall authorize the rendition of a judgment against any party who shall die before verdict found against him, regardless of the fact that he may have died upon the first or any other day of the term of said court, but authorizes the rendition of judgment against him after verdict and within one year thereafter. .

It would seem from reading these statutes that they are too plain to need construction and that may be the reason why there have been so few cases before this court calling for their construction, but nevertheless there are a few such, which we will here consider.

In the case of Sargeant v. Rowsey, 89 Mo. 617, l. c. 622, SHERWOOD, J., in construing this statute, said: "Relative to the decree which Rowsey obtained in the suit brought against John M. Sargeant and Rowsey by Tracy Sargeant to foreclose the mortgage given by John M. Sargeant, and in which Rowsey filed a cross-bill setting up similar equities to those now set up in the present action, and in which he obtained a decree as he alleges, for the sale of the land in dispute, and which, it seems, was sold under that decree, at which sale he bought; that such sale was a nullity, for the reason that the death of John M. Sargeant, against whom the suit was brought, was never suggested, nor the suit revived against either of his heirs, the present

plaintiffs; nor could such a revival occur until such suggestion was made. Nor was there any order of publication made by the court against Adelbert Sargeant, one of the plaintiffs, though the copy of publication recites such order as having been made.''

The same question was before this court in the case of Murphy v. Redmond, 46 Mo. 317, l. c. 319, where, in discussing the same, the court said: ''All the proceedings in the lower court, subsequently to the suggestion of the death of the plaintiff, were *ex parte* and unwarranted. There was no party plaintiff in court. No steps could therefore be properly taken in the cause until that deficiency was supplied, either by the voluntary appearance of the deceased's representatives, or upon *scire facias.* Until that was done the effect of the death of the plaintiff was to suspend all further proceedings. [Hopkins v. Dysart, 36 Mo. 47; Fine v. Gray, 19 Mo. 33; Jarvis v. Felch, 14 Abb. Pr. 46; Warren v. Eddy, 13 Abb. Pr. 28; Reed v. Butler, 11 Abb. Pr. 128.]''

The latter case differs from the former in these facts only; it was the plaintiff who died in the latter case and the defendant in the former, and in the latter the death of the plaintiff was suggested, but the death of the defendant was not suggested in the former.

The first distinction is not sufficient to justify different rulings in the two cases, for in the latter case the judgment was in favor of the dead man and his representatives got what he sued for and therefore had no greater reason for complaint than the representatives of the defendant had in the former, who lost his case. But, independent of that, all of the authorities hold that the statute equally applies to all the parties to the suit, whether plaintiffs or defendants, and regardless of the fact whether they lost or won the case.

The second distinction mentioned, namely, that the death of the plaintiff was suggested in the latter case and that of the defendant was not suggested in the former does not in legal effect differentiate them, be-

cause it was the design of the Legislature to prohibit the rendition of judgment against dead persons who have had no opportunity to be heard and defend the case upon its merits. But, independent of the reason, this court in both of those cases held, and correctly so, that judgments in both were void, because they were rendered against dead persons, notwithstanding the facts that the suit in each was instituted prior to the death of the party, and service of process had been served upon each. But I will here add that a judgment rendered against a dead person who has had no opportunity to defend the case on account of death, although served with process, arises but little, if any, above one rendered against him without due process of law. The injustice and barbarity of the latter is condemned by the State and Federal Constitutions, and the former has never been authorized by the common law, or by any statute of England or America that I know of.

As an original proposition I would have no hesitancy in saying that those constitutional provisions are not satisfied by the mere service of process, for that is only a preliminary to a litigant's paramount right to appear and defend the case upon its merits, but it is too late now to raise that question, for it seems the great weight of authority is to the contrary. And it is for this reason, doubtless, that the common-law rule abating a suit pending against a person who dies, whether served with process or not, has never been modified in this State by statute, except in the limited way mentioned in the sections previously quoted; in all other respects the common-law rule is still in full force and effect. Those sections *only temporarily suspend the abatement* of the case upon death of one of the parties in order that the interested parties may suggest the death and make his heirs, executors or administrators parties thereto and bring them into court by *scire facias*.

These statutes do not in express terms designate the person or persons whose duty is is to make the suggestion of death, nor do they prescribe the time when

that suggestion shall be made, but the Legislature evidently intended that any one interested in the suit on either side might make the suggestion, for the reason that the death of either the plaintiff or defendant abated it at common law, and for that reason it would seem that any one or more of them might at their option make the suggestion; nor do those statutes in terms specify the time when such suggestion shall be made, but evidently it must be made on or before the day the cause is set for trial, for the reason that under the common-law rule, the death of the party at the time permanently abated the suit, and the record entry thereof, if known, was made on or before the date of the trial, but if unknown and the trial proceded to judgment, the judgment was absolutely void and could be attacked collaterally; that part of the common-law rule has not been changed or modified by the statutes of this State; and the former part thereof is now and always has been the practice in this State, but the decisions and rulings of this court as to the latter part, that is, as to the judgment being void or only voidable are conflicting; but that conflict is immaterial at this particular point of the discussion, but will be considered later in connection with the authorities supporting the rules of the common law as before announced.

Having reached the conclusion as to who may make the suggestion of death, and when it must be made, if at all, the remaining provisions of the statutes upon the subject are so plain in meaning that no construction of them is necessary. Section 1916 provides that on or before the third term after the suggestion of such death, the court on motion may order the action continued by or against the representatives or successors of such party in interest, and the other provisions point out how the revival of the action is to be made, the parties gotten into court, and finally, if those things are not done on or before the third term after the suggestion of death has been made, then the suit shall abate. Then follows Section 1922, which provides that after

verdict shall be rendered, etc., if either party die before judgment is entered therein, the court may within one term after verdict enter final judgment in the name of the original parties; but Section 1923 expressly prohibits the entry of a judgment against a party who dies before the verdict is actually returned against him, regardless of the day of the term on which he may have died, and that if the judgment is rendered before verdict then the judgment is void.

It has been suggested that the statutes quoted abrogate the common-law rule as to the abatement of suits upon the death of a party thereto. By reading the statutes it will be seen that that is a mistaken conception of their meaning. The language of Section 1916 on this point is that "no action shall abate by the death," etc., thereby *assuming they will abate in all cases* according to the common law except those specified therein; it then provides how those specified may be revived with three terms after the suggestion of the death of any of the parties, but if not so revived within that time then they are to abate also.

In the light of the clear provisions of said sections the opinion of SHERWOOD, J., in the case of Sargeant v. Rowsey, supra, correctly declared the law, for it follows them, and holds that nothing contained in those sections shall be so construed as to authorize the rendition of a judgment against a dead person regardless of the time of his death except where verdict was found prior thereto and that a judgment rendered in violation of said statutes was absolutely void and could be attacked collaterally.

LAMM, J., in deciding the same question in the case of Adams v. Gossom, 228 Mo. 566, recognizes and enforces the fundamental principle of law above mentioned. While it is true the defendant in the tax case therein referred to was dead at the time of its institution, yet the same reason for its existence applies equally as well to a case where the defendant was living and served with process, had died prior to the date of

the trial and was thereby denied of a hearing, as if he had been dead when the suit was brought. After stating the facts of the case, Judge LAMM on page 577 said: "On such record can the judgment stand? We think not. This because: a. The laws of men deal with the quick and not with the dead. On the death of James F. Adams his heirs and widow took his title by descent cast. At the time of bringing the tax suit, James F. Adams was dead. His heirs and widow could not be sued and precluded vicariously. There was due them, by the law of the land, a day in court. As they were not parties to that proceeding it must be held that the judgment and deed are a nullity both as to Adams, dead, and his heirs, alive."

In deciding the same question where service of process had been had upon the defendant prior to his death the Supreme Court of Mississippi, in the case of Gerault v. Anderson, 1 Walk. l. c. 34, held: 'In courts of justice there must be *actor, reus* and *judex* before the court can act effectually to bind parties. To say that the court had jurisdiction over the dead would contradict every principle of law and rule of proceeding. Why, in chancery, on the death of a party and the transmission of his interests to another, is a bill of review required? Why is a suit said to abate on the death of either party? The answer is, that upon the death of the party his interest ceases and the jurisdiction of the court ceases also." Clearly, what the court there meant by saying that upon the death of a party his interest in the subject-matter of the suit ceased and that the jurisdiction of the court thereby also ceased, was that at common law the death of a party to a suit destroyed his interest in the subject-matter of the suit and, therefore, the jurisdiction of the court, both as to the person and subject-matter, permanently abated, as there was no common-law rule or statutory provision authorizing the revival of a suit in such a case until the enactment of the statute (17 Charles II, Chapter 8, Section 1), which in a very

limited way provided for a revival in a few cases, if a revival it may be called, which will be fully considered later.

In the case of Rentschler v. Jamison, 6 Mo. App. 135, the plaintiff sued one Garnhart in the circuit court of St. Clair County, Illinois, by attachment on the ground of non-residence, and attached the personal property of the defendant. The defendant appeared and defended the action, but judgment was rendered against him, which, on appeal, was reversed by the Supreme Court of Illinois; the defendant then died, and his administrator in Missouri, Jamison, was made a party, and was duly served by publication, but he did not appear and judgment was rendered against him, which was subsequently presented against Garnhart's estate in the probate court of St. Louis County, Missouri. The trial resulted in a judgment against the defendant, and he duly appealed the cause to the St. Louis Court of Appeals, and in discussing that case the court on page 137 said:

"It is quite well settled in Missouri, and has also been held in Illinois, and is generally held throughout the United States, both in the State and Federal courts, that where judgment is rendered in a suit by attachment without personal service on the defendant, the judgment is *in rem,* and the estate alone is liable for its payment. [3 Abb. Nat. Dig. 125; Warren Mfg. Co. v. Aetna Ins. Co., 2 Paine, 502; The Commonwealth v. Caldwell, 1 Gilmer, 536; Latimer v. Railroad Co., 43 Mo. 105.]

"It is, however, contended that as Garnhart appeared to this action during his life, and the court acquired jurisdiction of him, the administrator of Garnhart, as his personal representative, was properly brought in by notice. But this is not so. The circuit court of St. Clair County, Illinois, lost jurisdiction of the person of Garnhart by his death, and could acquire no jurisdiction over his administrator by any service had upon him whilst he was out of the territorial

limits of the sovereignty under which the court acts. For the State of Illinois cannot, by notice to a citizen of Missouri, draw him to its *fora.*"

In the case of Weller Mfg. Co. v. Eaton, 81 Mo. App. 657, the plaintiff obtained a judgment in Illinois against the defendant, a resident of St. Louis, Missouri; the defendant entered his appearance, but died prior to the rendition of the judgment, but in ignorance of his death the court proceeded and rendered judgment against him for the sum of $427.50. In due time a copy of the judgment was presented against the deceased's estate in the probate court of the city of St. Louis for allowance, where it was rejected, and the cause was appealed to the circuit court where the claim was allowed against the estate, and the executor thereof appealed the cause to the St. Louis Court of Appeals. The latter court reversed the judgment of the circuit court upon the authority of Sargeant v. Rowsey, supra; Rentschler v. Jamison, supra; Pendleton v. Russell, 144 U. S. 640, and Kelly v. Hooper, 3 Yeager, 395.

The Court in discussing this question said, at page 662: "If at the time the judgment is rendered there is no defendant, there cannot be jurisdiction in the court to render any judgment. The judgment sued on is no judgment." And the court in the Tennessee case of Kelly v. Hooper, 3 Yeager, 395, cited in this Weller case, said at page 396: "The defendant being dead, the chancery court of Mississippi had no jurisdiction to proceed in the cause, and pronounce a decree. For this cause the decree is void, and no action can be supported upon it. Any fact which will show the court had no jurisdiction, and that the judgment is consequently void, may be pleaded. We could not when called upon to enforce this decree, in the present action, refuse to look into the record to see whether the court had jurisdiction, whether the fact by which the want of juridiction appear on the face of the proceedings, or be shown by plea of the defendant."

In the case of Carter v. Carriger's Admrs., 11 Tenn. 411, the deceased was sued May 4, 1826, and personal service was duly had upon him. The cause was then continued until the February term, 1827, when the defendant was duly called, but came not, and made default, upon which judgment was rendered, and a writ of inquiry as to the amount of damages was ordered to be executed at the next term of the court. The cause was then continued from term to term, for causes not here material, until 1828, when the writ of inquiry was executed and the damages assessed at $4338.13, and execution ordered to issue. At the November term, 1829, of said court, the record stated that since the rendition of the judgment in 1827, it being suggested to the court that Nicholas Carriger, one of the defendants, departed this life, and that Leonard Carriger and Jonathan Eaton are his administrators; it is therefore orderd by the court that a *scire facias* issue for them to appear and show cause why execution should not issue against them, to be levied on the goods, etc., in their hands as such administrators, etc. At the return of the *scire facias*, February term, 1830, it having been served upon the administrators, they appeared and pleaded that when the judgment mentioned in the *scire facias* was rendered Nicholas Carriger was dead (having died subsequent to the service of process upon him). To that plea the plaintiff demurred, which was by the court sustained, and gave judgment that the plaintiff should have execution against the defendants, as such administrators, for the sum of $4338.13 with interest thereon from August 29, 1829, etc. From this judgment the defendants appealed the cause to the circuit court, which was by that court reversed, and the plaintiff duly appealed to the Supreme Court. In the discussion of that case the Supreme Court of Tennessee, on page 413 of said report, said: "Several errors are assigned, but it is not necessary to particularize them, as the common error assigned is sufficient—the having ren-

dered judgment against the defendants below, the administrators; for no proposition in our law is more clear than this, that a judgment rendered against a dead man is an absolute nullity. The object of all law is the living man, not the dead body. The defendants-in-error's case is not helped by a *scire facias;* its object is to enforce against the administrators a lien previously established against and fixed upon their intestate . When there is no such lien the *scire facias* is powerless; its action is not original, but consecutive and successive, wholly dependent upon the lability created against the living man. Without this foundation, the *scire facias* against the administrator is only an inoperative and empty form, without substance and without effect. The circuit court reversed the judgment of the county court, and gave judgment in favor of the administrators, which judgment this court affirms.''

The same principle of law is announced in the case of Warren Mfg. Co. v. Aetna Insurance Co. by the circuit court of the United States in 2 Paine, 1. c. 514 to 516.

The same question, where service was properly had and death occurred before judgment rendered, came before the Supreme Court of Kansas in the case of Kager et al. v. Vickery et al., reported in 49 L. R. A. 153, and Chief Justice DOSTER, one of the truly great jurists of this country, delivered the opinion of the court, and after a most exhaustive review of the authorities, among other things, he said, page 159: ''However, in the preceding section (199) the author says: 'At the common law an action was abated by the death of a sole plaintiff or defendant. And in some of the states the doctrine seems to be irrevocably settled that a judgment against a person who was dead at the time of its rendition is absolutely null and void.' In Life Assn. of America v. Fassett, 102 Ill. 315, the court says: 'Much of the confusion and uncertainty which prevail in the authorities on this subject is attributable, doubtless, to the fact that courts, in jurisdictions where

the common-law system obtains, in attempting to follow the adjudications of other courts, have failed to distinguish the cases resting on purely common-law grounds from those resting in whole or in part upon statutes modifying the common law. A careful examination of the authorities clearly shows that a judgment by the common law, in the absence of any statutory provisions on the subject, against a dead person, either natural or artificial, is absolutely void, and the fact that service may have been obtained, or the suit commenced, before the death of the party, makes no difference in this respect; and this was unquestionably the rule from the earliest period of the common law down to the seventeenth year of the reign of Charles II., when the British Parliament passed the first act somewhat modifying the common law on the subject. [Randal's Case, 2 Mod. 308; 1 Salk. 8; 2 Saund. 72, note m.] The rule of the civil law was the same. [7 Rob. Pr. 157.] By statute (17 Car. II, chap. 8, sec. 1) it was enacted, in substance, that the death of neither plaintiff nor defendant between the verdict and judgment should be assigned for error, provided the judgment should be entered up within two terms after such verdict. The courts of Westminster, in giving a construction to this act, held that where a party—and there was no difference between plaintiff and defendant in this respect—died in term time, though before verdict, the cause might nevertheless proceed to trial and judgment, upon the theory the entire term was in contemplation but one day. [2 Saund. 72, note m.] The judgments in these cases were entered precisely in the same manner as if the death of the party had not occurred, and the statute applied as well where the right of action did not survive to or against the legal representatives of the deceased party as where it did. [Ibid.] The next legislation on the subject was the statute of 8 & 9 Wm. III. Section 6, chap. 11, of that act provided, in substance, that in all actions to be commenced in any court of record, if the plaintiff or defendant should happen to die

after interlocutory and before final judgment, the action should not by reason thereof abate, if such action could be originally prosecuted or maintained by or against the executors or administrators of the party dying; but the plaintiff in such case, or, in the event of his death after such interlocutory judgment, his executors or administrators, might have a *scire facias* against the defendant, or, if he should die after such interlocutory judgment, then against his executors or administrators, to show cause why damages should not be assessed or recovered in such action, etc. It will be perceived that this act is in some of its main features much like our own statute on this subject, and is doubtless the original from which our own was modeled, though ours is un-questionably a great improvement on the English model. This act, it will be further observed, extends only to cases where the death of either party occurs after an interlocutory judgment. This brief reference to the earlier decisions founded on the common law, and subsequent legislation on the subject, clearly shows that the idea that a judgment against a dead person is voidable only, had its origin in the construction given to the act of 17 Car. II. above mentioned; and any extension of the doctrine to cases not falling within that act, or other acts of a similar character would, on principle, be a clear misapplication of it. It is also to be observed that these statutes, having both been passed since the fourth year of the reign of James I., are not of any binding force in this country; and it is clear the decisions of the English courts construing them are likewise, on principal, of no authority here; and, so far as they have been acted upon by the courts of this country in deducing the common law as to the effect of a judgment for or against a dead person, they had led, as already remarked, to much misapprehension and confusion on the subject. Such a judgment, when tested by the common law alone, as we have already seen, is absolutely void.

"It is proper, however, to say that in the subsequent case of Claflin v. Dunne, 129 Ill. 241, 21 N. E. 834, the Supreme Court of that State repudiated the quotation we have made from Life Asso. of America v. Fassett, as being a *dictum*. Therefore we have not made the quotation as expressive of the rule of authority in Illinois, but as the pertinent and deliberate declaration of eminent judges upon the abstract question of law, and also historically upon the origin and progress of the innovation in the common law made by the cases holding to a contrary doctrine. In view of Mr. Black, and also in the view of the Supreme Court of Illinois, as first expressed, it would appear that at common law a judgment against a dead man was a nullity. We have not been able to examine many of the numerous decisions which appear to hold to the contrary. It is altogether likely that the reasons for the complete reversal which they have made of the common law upon the subject have been in many instances influenced by statutory provisions. Some of the cases we have read appear to have been so influenced. To hold that a valid judgment can be rendered against a dead man (that is, a judgment which can be made the basis for an assertion of title adverse to his heirs or legal representatives) would seem to be a holding requiring the sanction of a statute more or less explicit in its terms. There is no statute in this State which in terms or by implication sanctions the rendition of a judgment against one deceased. Code Civ. Proc., sec. 40, reads as follows: 'An action does not abate by the death or other disability of a party, or by the transfer of any interest therein, during its pendency, if the cause of action survive or continue. In case of the death or other disabilty of a party, the court may allow the action to continue by or against his representative or successor in interest.' This statute, however, is no authority for the rendition of a judgment against a dead man. It simply provides that, in the case of a cause of action which may survive to the party plaintiff or

against the party defendant, the death of either of such parties shall not abate the action; that is, the action shall not be stricken from the docket. The proceedings so far conducted shall not go for naught, but may be continued in the name of or against properly substituted plaintiffs or defendants. The statute means that the progress of a case, though arrested at the point at which death intervenes, nevertheless from henceforward may be conducted by those upon whom the right of action devolves, or against those upon whom the liability descends. This statute, however, does not assume to validate proceedings conducted in the name of or against deceased persons. It simply provides that, if parties die, the proceedings begun may be thereafter conducted in the name of or against their successors in interest. The common law has been nowise changed, therefore, by statute in this State. The common law, as we believe, gave no sanction whatever to judgments against dead persons, even though such persons had been in their lifetime subject to the jurisdiction of the court, by complainant duly filed and process duly served.''

The opinion then proceeds with quotations from some of the cases I have hereinbefore quoted from, and concludes by holding the judgment rendered in that case was void.

In the case of Pendleton v. Russell, 144 U. S. 640, the court held that a judgment rendered against a dissolved corporation had no capacity to be sued, and that the judgment was not binding on the receiver of the defunct corporation; the corporation had been duly sued and properly served with process during its lifetime.

In the case of In re Young's Estate, 116 Pac. 1060, the Supreme Court of Oregon, in passing upon this question said: ''This court has not yet decided whether a judgment given against a person who dies before the hearing and submission of a case, is void, or whether it is merely voidable, and the authorities are hopelessly

divided upon that subject. But upon every principle of reason and justice such a judgment ought to be held an absolute nullity. Mrs. Philips at her death had a decree in her favor, conferring upon her valuable property and pecuniary rights. Her death revoked the authority of counsel to appear and represent her or her estate in the circuit court. The decree of the circuit court attempted to take these rights away and further to give a personal judgment against her for costs. While many courts, and perhaps a majority, have held that such a judgment is voidable, and not void, their reasoning does not convince us that a judgment against a person not in existence is anything other than wholly void, or that it can possibly bind any one. It may well be granted that, where a cause has been argued and submitted and the decision is in the breast of the judge, and nothing remains but the ministerial act of causing it to recorded, this function may be performed *nunc pro tunc* after the death of a party; or where default has been taken, and before entry of judgment the death of a party occurs, the entry of judgment, which is a mere ministerial act of the clerk, may be proper and regular; but that, where death occurs before a hearing upon the merits, the court may pass judgment upon the rights of a decedent, and deprive him or his unrepresented estate of valuable property, is a proposition so illogical and unjust that we cannot assent to it, even though decisions parroted down from one court to another, with hardly a pretense of reasoning to support them, may preponderate in number over those holding the contrary doctrine.''

The same rule is announced in the following cases: Randal's Case, 2 Mod. (Eng.) 308; Underhill v. Devereaux, 2 Saund. (Eng.) 72; Tarleton v. Cox, 45 Miss. 430; New Orleans, etc., Railroad Co. v. Bosworth et al., 8 La. Ann. 80; McCreery v. Everding, 44 Cal. 284; Lynch v. Tunnell, 4 Harr. (Del.) 284; Meyer v. Hearst, 75 Ala. 390; Guyer's Admr. v. Guyer, 6 Houst. (Del.) 430; Weis v. Aaron, 75 Miss. 138, 21 So. 763, 65 Am.

St. Rep. 594; Kager v. Vickery, 61 Kan. 342, 59 Pac. 628; Reilly v. Hart, 130 N. Y. 625; 1 R. C. L. p. 23, sec. 14.

In Bivens v. Henderson, 86 N. E. 426, the Supreme Court of Indiana, in discussing this question, on page 428, said: ''A fact, however, appears, without dispute or controversy in the evidence in the case, that is fatal to both contentions. It is shown that the said Charles Mathews died while the proceedings resulting in the judgment were pending, and long before the rendition of the judgment relied on, and the same was therefore an absolute nullity, both for and against all who claim under him.''

I have considered the scores of cases bearing upon this question, and must concede that there is an irreconcilable conflict between them, as many of the courts of the various states have said, and as said by Mr. Chief Justice DOSTER in the case of Kager v. Vickery, supra, this conflict has been greatly influenced by many statutory provisions.

After a most careful consideration of the cases, we are satisfied that the great conflict has grown out of the fact that most of the courts were dealing with express statutory authority without referring to the statutes, or they have erroneously assumed that under the common-law rules of England such procedure was proper, and that said rules were in force in the respective states whose courts delivered those opinions, while as a matter of fact all of the authorities which have considered the matter agree that no such rule existed at common law, but upon the contrary, that not only were all judgments void which were rendered against dead persons in a suit instigated before death, but also all judgments rendered against dead persons in suits brought against them while living and after process served but who died prior to the rendition of the judgments, were void. As to this there can be no doubt; nor was there a law of any kind in England prior to the enactment of the statute (17 Charles II., chap. 8,

sec. 1) which authorizes any such procedure. That statute in substance provided that the death of either party to a suit between the return of the verdict and the rendition of the judgment thereon should not be assigned as error, provided the judgment should be entered within two terms thereafter. This is the tiny and harmless statute upon which the many statutes throughout the United States are predicated, though materially changed and enlarged, and out of which so many unjust and vicious decisions have been made.

The original statute of England was not unjust or vicious in effect for the obvious reason that the deceased party had had his day in court prior to his death, except hearing the formal pronouncement of the judgment upon the verdict. But that statute falls far short of authorizing a trial, the return of a verdict and the rendition of judgment thereon, after the death of the party. In actual and legal effect a statute or decision which tolerates such a practice is unjust and vicious, as much so as if the party had never in the first place been brought into court by the service of proper process; in neither case has he had a hearing in court which is guaranteed to him by the fundamental laws of the country.

But returning to the conflict of decisions upon this question, there is not only a conflict between the opinions rendered by the courts of the various states and those of the United States, but there is a sharp conflict between those rendered by the courts of the same state, and Missouri falls within the latter class.

We will now briefly review the decisions of this State which are in conflict with the case of Sargeant v. Rowsey, supra, and the other cases heretofore reviewed from this State following that one.

The first of these we will notice is the case of Coleman v. McAnulty, 16 Mo. 173, the opinion in which was rendered by that able and distinguished jurist, Judge Scott. In the discussion of this question the court, in speaking through Judge Scott, said: "The

only question in the cause is whether the judgment against the garnishee was void and a nullity, by reason of the death of Boyd, before it was rendered. In maintaining the affirmative of this question, the appellant is not supported by any of the cases cited by him. The case of Borden v. Fitch, 15 J. R. 145, and that of Kelly v. Hooper, 3 Yerger, 395, are both within the principle prevailing in some of the states allowing the judgment of another state to be impeached for lack of jurisdiction. [2 Cow. and Hill, 915.] All that is contained in the case of Woodcock v. Bennett, 1 Cow. 735, in relation to this matter, is taken from the case of Parsons v. Loyd, 3 Wils. 341, where it is said, that 'there is a great difference between erroneous process and irregular (that is to say, void) process; the first stands good and valid until it be reversed; the latter is an absolute nullity from the beginning.' This was a suit against a plaintiff in an action for suing out a void *capias ad respondendum* which had been set aside. In the same case it was said that there was no remedy against the officer, for he was obliged to obey a writ emanating from a court of general jurisdiction. This is unquestionable law, that a writ, regular on its face, emanating from a court of superior jurisdiction, is a justification to the officer acting under it; and it is a general rule, that wheresoever an officer can justify under a writ, he can pass a title by a sale under it, if all other prerequisites to a sale have been complied with. [Cox v. Nelson, 1 Mon. 95; McKinney v. Scott, 1 Bibb. 155; Reardon v. Searcy's Heirs, 2 Bibb. 202; Coleman v. Trabue, 2 Bibb. 518.] In 2 Tidd's Practice, 936, it is said: 'If the judgment or execution be irregular, the party cannot justify under it, for that is a matter in the privity of himself or his attorney; and if the sheriff or officer in such case join in the same plea with a party, he forfeits the benefit of his defense. The sheriff or officer, however, may justify under an irregular judgment, as well as an erroneous one, for they are not privy to the irregularity. And, so as the writ

be not void, it is a good justification, however, irregular, and the purchaser will gain title under the sheriff; for it would be very hard if it should be at the peril of the purchaser, under a *fieri facias,* whether the proceedings were regular or not.' In the case of Warder v. Tainter, 4 Watts, 278, the court says, the authorities are abundant to show that in no case is a judgment rendered by a court of general jurisdiction considered void on account of the death of the defendant having taken place before the rendition of it; that, at most, it is only voidable. If the death of the defendant will not render a judgment void, no reason is perceived why the death of the plaintiff should have that effect. There being, then, a valid sale under a writ, supported by a judgment not void, the title of Coleman passed by it. The proceedings to set aside the judgment did not affect the respondent, as he was no party to them. Judge RYLAND concurring, the judgment will be affirmed; Judge GAMBLE not sitting."

This opinion was written in 1852, and whatever may have been said for or against the soundness of the rule announced by him in that case at the time it was written, in our opinion it has not been authoritative in this State since the enactment of Sections 1, 6, 7 and 8 of Chapter 170, General Statutes 1865, page 678, which have passed through the various revisions of our statutes without change and are now Section 1916, 1921, 1922 and 1923, Revised Statutes 1909, which we have previously copied.

As before stated, these statutes were not enacted for the purpose of abating the jurisdiction the court acquired over the person of a litigant before death by the service of process, for the reason, as shown by all of the authorities under the common law of England, the death of the party in such case completely destroyed the jurisdiction of all earthly courts over him, as completely as if he had never been served with process and brought into court, nor under that law could the cause

be proceeded with against him, nor could it be revived against his heirs, executors or administrators.

The statute (17 Charles II, chap. 8, sec. 1) before mentioned did not apply to the heirs or successors of the deceased party, but simply authorized the court within two terms after the return of a verdict in a cause to enter the formal judgment therein against the deceased (he having had his day in court) without process being served upon any one. That statute in some of its provisions is similar to said Section 1922 of our statute.

The next legislation upon this subject was the statute of 8 and 9 William III., sec. 6, chap. 2, which provided, in substance, that in all actions, if either party thereto should die after the entry of the interlocutory judgment and before final judgment, the action should not abate for that reason, if such action could originally have been prosecuted or maintained by or against the executors or administrators of the deceased party; but the plaintiff in such a case, or in the event of his death after such interlocutory judgment had been entered, his executors or administrators, might have a *scire facias* against the defendant, or, if he should die after such interlocutory judgment, then against his executors or administrators, to show cause why damages should not be assessed and recovered in such action. It will be observed that the difference between these two statutes is that before the judgment under the former could be enforced the trial had to be completed and the verdict assessing the damages actually returned by the jury before the death of the party occurred, while under the latter, if the party died after the entry of the interlocutory judgment, but before the assessment of the damages, then the executors or administrators of the deceased party could be brought in by *scire facias* and given a hearing on the question of damages before final judgment could be rendered thereon. But, as previously stated, the fact that the common law as it theretofore existed remained in full force and effect except as

modified by those two statutes must not be overlooked.
The latter statute for the first time in the English juris-
prudence marked the dawn of the legal right of execu-
tors and administrators of the estate of a deceased
party to a suit to become parties thereto by revivor;
and we may correctly say our statutes upon this sub-
ject were modeled after that one, although ours is a
great improvement over the English statutes upon the
subject. And as was said by Chief Justice DOSTER in the
case of Kager v. Vickery, 61 Kan. 342, a brief reference
to the earlier decisions founded on the common law, and
subsequent legislation on the subject, clearly shows that
the idea that a judgment against a dead person is void-
able only, had its origin in the construction given to the
Act of 17 Charles II. above mentioned; and any ex-
tension of the doctrine to cases not falling within that
act, or an act of a similar character, would be a clear
misapplication of it.

Since the English construction of that statute gave
rise to much of the conflict existing among the decisions
of this country regarding the subject, it will be helpful
to briefly state the substance of that statute and the
construction placed upon it by the English courts, and
then note how the Legislature of this State hedged
against our courts to prohibit them from placing the
same construction upon our statute, Section 1922, re-
garding the subject, by the enactment of Section 1923
before mentioned. The English statute briefly pro-
vided that the death of neither plaintiff nor defendant
between verdict and judgment should be assigned
for error provided the judgment should be entered with-
in two terms after such verdict. The English courts con-
strued the act to mean that where one of the parties
died in term time, though before verdict, the cause
might nevertheless proceed to trial and judgment, upon
the theory that the entire term was in contemplation
of law but one day. [Randal's Case, 2 Mod. (Eng.) 308.]
In the first place I will state we have no such fiction
that the entire term of court is within contemplation

of law but a single day. That fact alone would prevent such a construction being placed upon such a statute in this State. But to make that matter doubly sure, the Legislature enacted Section 1923 which reads:

"Nothing in the preceding section shall be construed to authorize the entry of a judgment against any party who shall have died before a verdict is actually rendered against him, notwithstanding he may have died on the first or any other day of the term at which such verdict shall have been rendered, but such verdict shall be void."

If in the light of this English statute and the construction placed upon it by her courts, we look at the purpose the Legislature had in mind by the enactment of Section 1922, and its construction by Section 1923, it seems to be perfectly clear that it did not propose that a judgment should be rendered against a dead person unless the cause had been tried and the verdict had been actually returned against him before his death, and then the judgment must be rendered within one term after the return of the verdict, otherwise it would be void. And I might add that there is no language contained in either of the English acts which authorized the rendition of such a judgment except by resorting to the legal fiction before mentioned, and except where the case has been heard upon its merits prior to his death, and that too after he had been given a day in court; the damages could not even be assessed after his death, and that too after the case had been heard upon its merits, until the enactment of the Statute of 8 and 9 William III., and not then until his executors or administrators had been made parties and brought into court by a *scire facias* as provided for by that act. And it should also be borne in mind that neither of those statutes has ever been adopted by this State as a part of the common law of England. Section 8047, Revised Statutes 1909, adopts "the common law of England and all statutes and acts of Parliament made prior to the fourth year of the reign of James the First,

and which are of a general nature," etc.; it must be observed that both of those statutes were enacted subsequent to the fourth year of the reign of James the First, and, therefore, they are not embraced within the provisions of said Section 8047 of our statutes. We call special attention to these matters because their relevancy will appear later.

From the foregoing observations it is seen that at the time Judge Scott wrote the opinion in the case of Coleman v. McAnulty, supra, under the common law and statutes of England as adopted by this State, the death of a party to a suit completely ousted the court of its jurisdiction over his person, and the suit permanently abated. So it is perfectly clear that neither the common law, nor the statutes of England as adopted by this State, authorized the rendition of the judgment in the Coleman-McAnulty case, for the reason that there had been no trial whatever in that case to bring it within the operation of either of those statutes; and of course said opinion finds no support in Sections 1, 6, 7, and 8 of Chapter 170, General Statutes 1865, for they were not enacted until some twelve or fourteen years after Judge Scott wrote that opinion. It is true Judge Scott cites certain cases as authority for the position he took in that case, yet when they are traced back to their fountain head it will be discovered that they have no real foundation to rest upon outside of the statutory provisions of the states in which they were delivered, which followed the English cases, bottomed upon the fiction before mentioned, and, therefore, did not support the doctrine stated by Judge Scott.

The same investigation which disclosed the fact that the opinion in the case of Coleman v. McAnulty, supra, was clearly erroneous, demonstrates the fact that the one written by Judge Sherwood in the case of Sargeant v. Rowsey, supra, correctly declares the law of this State as provided for by Sections 1916, 1921, 1922 and 1923, Revised Statutes 1909.

The only case in this State which has been written subsequent to the announcement made in the Coleman-McAnulty case which undertakes to review the authorities is the case of State ex rel. v. Riley, 219 Mo. 667. While the latter does not in express terms overrule the former, yet it does so by necessary implication, for the reason that it arrives at a different conclusion and reasserts the old rule announced in the Coleman case, which is to the effect that if the suit is brought against a dead person, any judgment that may be rendered against him is absolutely void, but if brought against a living person over whom the court obtained jurisdiction by the service of process upon him and he subsequently dies, the court is not thereby deprived of its jurisdiction. The court in the case of Hinkle v. Kerr, 148 Mo. 43, says that "while it ought not to proceed to judgment without making the representatives or successors in interest of the deceased parties to the action, yet if it does so proceed its action is irregular merely and the judgment is not void." Why so? No statute of this State nor the common law so provides, but upon the contrary, the statutes expressly provide that such a judgment is absolutely void. All of the authorities agree that a judgment rendered in a suit instituted against a dead man is absolutely void as to him, because the court acquired no jurisdiction over his person. This is self-evident, and of course there could be no dissent to such a plain proposition, but I am at a complete loss to know, if that is true, why the court does not lose jurisdiction over the person of a party to a suit by his death when he dies after service of process upon him? He is just as dead in the one case as he is in the other, and in neither can he appear and prosecute or defend the case upon its merits, the very purpose of bringing a party into court; nor can it be logically said that a personal judgment can be rendered against either. but if against the latter why not against the former also? It could with the same degree of pro-

priety be said that in a proceeding purely *in rem* the court cannot acquire jurisdiction over the *res* if it has been totally destroyed before the institution of the suit, but if the destruction occurs after the institution of the proceeding and the publication of the notice to the world, the court would, nevertheless, retain jurisdiction over the subject-matter of the suit. I have no hesitancy whatever in saying that no such thing can be done in law or fact. God alone can pass judgment against a dead person or his soul that lives thereafter, and His laws alone can deal with the indestructible elements of totally destroyed property—courts and their rulings to the contrary notwithstanding.

But why make a distinction between a judgment rendered against a man who died before the institution of the suit and one rendered against one who dies thereafter but prior to the trial of the cause? Why should it be void in the former and only voidable in the latter? There certainly is no common-law rule or statutory enactment in force in this State that authorizes such a distinction or authorizes the rendition of a judgment against a dead person in either case; if so, no one has pointed their finger to such a rule or statute, and after a most exhaustive and thorough search of the authorities I have been unable to find any such, except the bold bald assertion of some of the courts which in their earlier decisions erroneously assumed that the common law of England adopted in this State was authority therefor

It has been suggested in some of the cases that it would be intolerable. if not impossible, for the surviving parties to a suit  to keep track of and learn of the death of the other litigants. It seems to me that this is a very poor argument upon which to predicate a judgment depriving the heirs, executors and administrators of the estate of a dead person of their rights to his property, none of whom have had their day in court. Besides that it seems to me that it would be much easier for the surviving party to a suit to keep track of and

acquire the knowledge of the death of the opposing party, after he has once been located and served with process, than it would be to ascertain the knowledge of his death which had occurred perhaps long prior to the institution of the suit. He is compelled to know the fact when the death occurs before bringing in the suit, and why should he not be required to do so where death occurs after its institution and subsequent to service?

The answer is as before stated; there is no distinction in law or fact or in equity or justice, and the error committed through an erroneous assumption by a distinguished judge of this court in the early history of our jurisprudence should no longer be the basis or authority by which to deprive the living or dead of their property without a day in court. Our statutes before mentioned were evidently enacted to prevent this gross injustice after the earlier ruling had been announced by Judge Scott, and in my opinion they and not his opinion should be controlling in this State.

These views are in perfect harmony with our statutes governing kindred subjects, viz.: those prohibiting the enforcement of executions against the property of a deceased person, requiring all judgments (which of course must be rendered against the living) to be presented against his estate, in the probate court, allowed and classified as other claims; also in harmony with the statutes providing for the administration of a deceased person's estate. But the rule announced in the Coleman-McAnulty case violates all of said statutes.

For the reasons stated, that case and all those following it and announcing the same views are hereby overruled, and the rule announced by Judge SHERWOOD in the case of Sargeant v. Rowsey, 89 Mo. 617, is confirmed.

We therefore hold that the judgment rendered February 20, 1908, against James W. Cole, who died June 5, 1907, before the return day of the order of publication, which was June 10, 1907, without a revival of the suit against his representatives or successors as

provided for by Sections 1916, 1921, 1922 and 1923, Revised Statutes 1909, is absolutely null and void as to him and them, and can be attacked in this collateral proceeding for the partition of the lots in controversy; also that the sheriff's deed executed to the Company, based upon the tax suit judgment, is absolutely null and void as to said James W. Cole, and his heirs at law.

III. Counsel for plaintiffs, Philla Olds Cole and James Gilbert Cole, the widow and son of James W. Cole, deceased, and the devisees of his interests in and to the lots in question, contends that the judgment rendered in the tax suit before mentioned is void as to them, for the same reasons that it is held to be void as to James W. Cole in paragraph two of this opinion, viz.: that he departed this life prior to the return day of the writ of summons served upon him in said tax suit and necessarily before the verdict was returned at the trial, and that the suit was never revived against his representatives or successors in interest, as is provided for in such case by Sections 1916, 1921, 1922 and 1923, Revised Statutes 1909.

Heirs and Devisees.

In our opinion this contention is well taken. If the judgment in the tax suit was void as to James W. Cole because the verdict of the jury or the finding of the court had not been actually returned or made at the time of his death, under the statutes mentioned, as we have held in paragraph two, then his interest in the lots was conveyed to his widow and son by his will, and the suit not having been revived against them and they brought into court as provided by said statutes, then said interest in and to the lots was not affected by said judgment. We therefore rule this contention in favor of the plaintiffs.

IV. Counsel for the Company suggest that Philla Olds Cole, the widow of James W. Cole, was made a party defendant to the tax suit when it was instituted

After-Acquired Interest.

and that she was properly served by publication, and was in at all stages of the proceeding, and, therefore, it would have been a useless and idle ceremony to have revived the cause in her name, and again have notified her by publication.

This suggestion is more plausible than sound; and should we assume that the publication in the tax suit as to her was legally sufficient to have brought her into court in that case, and to bind the interest the petition filed therein charged she owned in and to the lots, yet that publication would not and could not bind future-acquired interest therein as a devisee under her husband's will.

The petition in the tax suit in substance among other things charged that the lots originally belonged to John J., James W. and Robert S. Cole, as tenants in common, each owning one undivided one-third interest therein, and that Robert S. Cole had departed this life prior to the bringing of the suit, which was against James W. Cole, Philla Olds Cole, William T. Cole, John J. Cole, and the unknown heirs of Robert S. Cole, deceased; the petition also charged that Philla Olds Cole was the wife of James W. Cole and claimed some interest in the lots, and that William T. Cole was a son of Robert S. Cole.

The only legal conclusion that can be drawn from these allegations of the petition, if true, and they must be taken as such against the plaintiff in that case, is that Philla Olds Cole, the wife of James W. Cole, one of the three tenants in common owning the lots, at the time of filing the petition, owned and could only have owned an inchoate right of dower in her husband's undivided one-third interest, in the lots. If she was properly served by publication in that case, which for the sake of this argument we admit, the judgment rendered therein against her would have bound her said inchoate right of dower, and the sale under the execution issued thereon would have conveyed that interest to the Company, and she would have no legal right

to complain of that sale, in this suit. But in a suit to collect taxes it should be borne in mind that the wife of a·man owning real estate need not be made a party thereto, ·for the reason that the tax lien is a superior right to the wife's inchoate right of dower, and a sale of the property under execution for the payment of the taxes would divest her said interest and convey it to the purchasers. That being true and if she knew of the pendency of the suit, and we must assume that she did, where we assume the service by publication was valid, that may have been, and doubtless was, the reason, why she did not appear and defend the tax suit; but that is quite a different proposition from the one here presented for decision. Here the Company is contending that Mrs. Cole's one undivided one-sixth interest in fee in and to the lots was bound by the judgment rendered in the tax suit because she was a party thereto and that it was sold to the Company under the execution issued thereon.

This contention is clearly untenable. At the time of bringing the suit, Philla Olds Cole did not own this one undivided one-sixth interest in these lots; it was an undivided one-half of the interest her husband, James W. Cole, owned therein, and which he devised to her as previously stated. If the sale of his interest therein was not conveyed to the Company by the sale under execution issued on the judgment rendered against her husband, James W. Cole, in the tax suit, as we have held it did not, then it passed to her under his will and the petition not having proceeded against this interest of hers, of course the judgment rendered against her did not bind it; even though the petition had been amended after her father's death with a view of subjecting this interest of hers to the payment of the tax bills, yet an *alias* summons or order of publication should have been issued and properly served upon her, for the reason that this would have been a material amendment, after the service by publication had been

made, within the meaning of decisions which hold that if after publication the plaintiff amends his petition and takes a different judgment from that originally prayed for, the judgment will be null and void. Randall v. Snyder, 214 Mo. 23, l. c. 30; Leavenworth Terminal Ry. & Bridge Co. v. Atchison, 137 Mo. 218, l. c. 230; Janney v. Spedden, 38 Mo. 395.] We, therefore, decide this contention against the Company.

V.   The same conclusion must be arrived at, as to the interest of James Gilbert Cole, the son and devisee of James W. Cole, that we reached as to the interests of Philla Olds Cole in paragraph four of this opinion, and largely for the same reasons there stated.

Subsequent Devisee.

The allegations of the petition that John J., James W. and Robert S. Cole purchased and were the owners and tenants in common of the lots in controversy, each owning an undivided one-third interest therein, negatived the idea that his son, James Gilbert Cole, owned an undivided one-sixth interest therein, especially when read in the light of the fact that the tax bills sued on were not issued against him. But be that as it may, James Gilbert Cole, as disclosed by this record, owned no interest whatever in these lots when the tax suit was instituted, and the only interests that he now owns or has ever owned in them was devised to him by his father subsequent to the institution of that suit; that suit could not have bound his after-acquired interest in the lots, unless an amended petition had been filed, stating those facts, he made a party thereto, and an *alias* summons or order of publication, issued and duly served on him. That was not done, and, therefore, we hold that the sale under the execution issued on the tax suit did not convey his interest in the lots to the Company, and for that reason we decide this question in his favor.

VI. Counsel for plaintiffs next insist that the
execution sale of William T. Cole's interest
in the lots under this judgment on the tax-
suit mentioned was void, because the petition
therein did not state facts sufficient to
constitute a cause of action against him.
The allegation of the petition is as follows:

No Cause of
Action Stated:
Collateral
Attack on
Judgment.

"Plaintiff states that William T. Cole and Philla
Olds Cole, defendants herein, claim some interest in
each of the within described tracts of land and that
plaintiff makes said parties defendant that they may set
up whatever rights and interest they may have.

"Plaintiff states that defendants, William T. Cole,
Philla Olds Cole and James W. Cole, are non-residents
of the State of Missouri, and cannot oe served in this
State in the manner prescribed in Article 4, Chapter
8, Revised Statutes 1899."

In short, the petition simply charges that William
T. Cole and Philla Olds Cole "claim some interest in
each of the within described tracts of land."

In the discussion of this question we must not con-
fuse the statement in the petition of the first paragraph
thereof as to the interest of William T. Cole with that
as to his non-residence of the State of Missouri, etc.,
contained in the second.

The first was governed by Section 592, Revised
Statutes 1899 (the suit having been instituted April
27th, 1907), providing what the petition shall contain,
and the second was controlled by Section 575, Revised
Statutes 1899, providing for service of process upon
known non-residents defendant, etc.

Said Section 592 provided among other things that
the petition shall contain: . . ; second, a plain and
concise statement of the facts constituting a cause of
action, without unnecessary re-petition," etc.

If we test the sufficiency of the petition as to
William T. Cole's interest in the lots by the provisions
of this statute, it will be seen that it falls far short of
the statutory requirements. The statement is that he

"claims some interests in each of the within described tracts of land." That is not a statement of the facts showing his interest therein, but it is simply a statement of a conclusion. The facts must be stated in the petition in order that the court may draw the conclusions therefrom as to whether or not he owned the interest in the lots which it was charged he owned, which the Company was trying to subject to the payment of the taxes.

We are, therefore, of the opinion that the petition does not state a cause of action against William T. Cole; especially is this true when we read the foregoing statement as to the interest of William T. Cole in connection with the following statements also contained in the petition:

"Plaintiff states that Robert S. Cole, named in each of the within mentioned tax bills as one of the owners of the within described lots, is deceased, and that his interest has passed to his heirs, and that plaintiff after diligent search could not discover and is unable to insert the names of said heirs and what interest each may have.

"Plaintiff states that James W. Cole, John J. Cole, and the heirs of Robert S. Cole, deceased, defendants herein, are the owners of part of Lot No. 5 of the subdivision in partition of the estate of William O'Donnell, deceased, in Block No. 1661 of the City of St. Louis, to-wit:"

Then follows a description of said lot; and thereafter follows a similar allegation and description of each of the other lots in controversy.

It will be observed that the petition states that Robert S. Cole had departed this life intestate and that his interest in the three lots had passed to his heirs, "and that plaintiff after diligent search could not discover and is unable to insert the names of said heirs and what interests each may have," thereby indirectly, at least, charging that William T. Cole was not an heir of Robert S. Cole, for the reason that the Company

evidently knew William T. Cole, for it names him in the petition in the class with Philla Olds Cole, who was not an heir of Robert S. Cole, as claiming some interest in the lots, and asked that they be required to set up in their answers whatever interest they might have therein; clearly indicating that neither of them was an heir of Robert S. Cole, deceased, and as a matter of fact Pilla Olds Cole was not, but that fact is no more clearly stated in the petition than that William T. Cole is not one of them; the fact that he was one of them as was first disclosed by the pleadings and evidence in this case does not change the fact that the petition in the tax suit charged that he was not one of them, or probably more correctly speaking, that the petition in that case did not charge that he was one of those heirs.

We, therefore, reiterate that the petition in the tax suit did not state a cause of action against William T. Cole, nor against Philla Olds Cole for the same reason; and for that reason, the judgment rendered thereon was an absolute nullity. It is elementary that a valid judgment cannot be rendered upon a petition which does not state facts sufficient to constitute a cause of action; this is because the court acquires no jurisdiction of the subject-matter and such a judgment will be treated as a nullity, even in a collateral proceeding. In the case Reynolds v. Stockton, 140 U. S. 254, l. c. 266 to 272, the question is fully discussed. [Bell v. Johnson, 207 Mo. 281, l. c. 287.] The case of Winningham v. Trueblood, 149 Mo. 572, and that of Tube Works Co. v. Ice Machine Co., 201 Mo. 30, announcing a contrary doctrine, are overruled.

VII. It is next insisted by counsel for Philla Olds Cole and William T. Cole, that the order of publication issued against them in the tax suit was insufficient under Section 575, Revised Statutes 1899, to bring them into court, and therefore the judgment rendered therein against them, and the execution sale had thereunder, are absolutely void.

Order of Publication.

If we correctly understand counsel for the Company, they contend that the order of publication mentioned could have been properly issued against them either under the section just mentioned or under Sectio 580, Revised Statutes 1899. We will dispose of this contention first. We are unable to lend our concurrence to this contention, for the reason that both Philla Olds Cole and William T. Cole were known to the plaintiff, for their names are stated in the petition by it, while said section in express terms limits its application to those suits where the plaintiff alleges in the petition "under oath, that there are, or that he verily believes there are, persons interested in the subject-matter of the petition, whose names he cannot insert therein, because they are *unknown to him,* and shall describe the interest of such persons, and how derived, so far as his knowledge extends," etc. (The italics are ours).

So it is perfectly apparent from the face of the record in that case that the order of publication mentioned could not have properly issued against them under the authority of Section 580, they being known parties.

Returning to Section 575: This section reads as follows:

"In suits in partition, divorce, attachment, suits for the foreclosure of mortgages and deeds of trust, and for the enforcement of mechanics' liens and all other liens against either real or personal property, or in all actions at law or in equity, which have for their immediate object the enforcement or establishment of any lawful right, claim or demand to or against any real or personal property within the jurisdiction of the court, if the plaintiff or other person for him shall allege in his petition, or at the time of filing same, or at any time thereafter, shall file an affidavit stating, that part or all of the defendants are non-residents of the State, or is a corporation of another State, kingdom or country, and cannot be served in this State in the manner prescribed in this chapter, or have absconded or absented themselves from

their usual place of abode in this State, or that they have concealed themselves so that the ordinary process of law cannot be served upon them, the court in which said suit is brought, or in vacation the clerk thereof, shall make an order directed to the non-residents or absentees, notifying them of the commencement of the suit, and stating briefly the object and general nature of the petition, and, in suits in partition, describing the property sought to be partitioned, and requiring such defendant or defendants to appear on a day to be named therein and answer the petition, or that the petition will be taken as confessed."

This section clearly authorized the issuance of the order of publication in the tax suit against Philla Olds Cole and William T. Cole, for the reason that it was to enforce a lien against real estate and the petition named both of them therein and stated that they were non-residents of this State and that the ordinary process of law could not be served upon them on that account. Upon the statement of those facts in the petition the statute is mandatory that the order of publication shall issue and then proceeds to direct the court, or clerk in vacation, to issue the order notifying said parties of the commencement of the suit. The statute then proceeds by providing what the *order of publication shall contain, not what the petition shall state*, for it must state those facts before the duty of the court or the clerk arises, viz: "stating briefly the object and general nature of the petition, and, in suits in partition, describing the property sought to be partitioned." In other words, that clause of the statute addressed to the court in term time or to the clerk in vacation only requires them to briefly state in the order the object and the general nature of the petition as *they find it on file* in the clerk's office, and whether the petition is good or bad must be tested by the rules of pleading, and not aided or pieced out by the statutes regarding the issuance and service of process,

According to the allegations of the petition the order of publication was properly issued and that it was sufficient cannot be seriously questioned, for it briefly stated the object and general nature of the suit; under the provisions of said Section 575 that was all the order of publication is required to state. But it by no means follows that the Company was entitled to a judgment against them enforcing the taxes against their subsequently acquired interests in the lots simply because the order of publication conformed to the requirements of the statute; that would no more logically follow in constructive than in personal service.

The court must acquire jurisdiction over the subject-matter of the suit whether the service of process is by publication or personal service. That is done by stating in the petition the existence of a certain state of facts regarding the *res*, which show that the case thus stated belongs to a class of cases over which the law gives the court jurisdiction, and if those allegations are followed up by service of process as provided for by law, whether personal or constructive, the jurisdiction of the court becomes complete over both the person and subject-matter of the suit. But the trouble with the petition filed in the tax suit is that it did not allege that Philla Olds Cole and William T. Cole owned any interest in the lots in controversy at the time of the institution of the suit, but the record in that case, as previously shown, conclusively shows that their interest therein was acquired subsequently thereto; under that showing, as previously held, the judgment in that case, in so far as those interests of these parties are concerned, was and is absolutely void, and the sale made thereunder is likewise void.

VIII. It is finally insisted by counsel for the Company that upon the face of the record the action of the trial court in holding the order of publication in the tax suit was not in substantial compliance with Section 580, Revised Statutes 1899, and that therefore,

Anna E. Sands, Sarah J. Ridpath and Mary Cole Parker, the unknown heirs of Robert S. Cole, were not properly served with process in that case, and for that reason the judgment by default rendered against them in that suit was void, was erroneous. The suit was brought against John J. Cole and others, and the allegations thereof regarding them were as follows:

"That Robert S. Cole, named in each of the within mentioned tax bills as one of the owners of the within described lots, is deceased, and that his interest has passed to his heirs, and that plaintiff after diligent search could not discover and is unable to insert the names of said heirs and what interest each may have." (It developed in this case that they were the unknown heirs of said Robert S. Cole, deceased).

Then follows an allegation as to the description of the lots and the ownership thereof and a prayer for a judgment foreclosing the tax lien, etc.

The order of publication, in so far as is material to this controversy, is as follows:

"Now this day comes the plaintiff by its attorneys, and it appearing to the satisfaction of the undersigned, from the allegations in the petition, under oath, that the defendant James W. Cole, Philla Olds Cole and Wm. T. Cole are non-residents of the city of St. Louis, Missouri, and cannot be served with process herein, and that the heirs of Robert S. Cole, deceased, defendants herein, cannot be served with process herein because their names are unknown to the plaintiff.

"It is therefore ordered by the undersigned that publication be directed to  . . .  the heirs of Robert S. Cole, notifying said defendants that an action has been commenced against . . . the unknown heirs of Robert S. Cole, deceased, by petition, by the Parker-Washington Company, in the circuit court of the city of St. Louis, in the State of Missouri, Room No. 8, cause No. 249, June Term, which said petition contains three counts, as follows:

"The first is to enforce the lien of a special tax bill No. 25436 for $100 and interest and costs of said action against part of lot No. 5 of the subdivision in partition [etc. describing the real estate].

"The second is to enforce the lien of special tax bill No. 25433 for $380.85, interest and costs of action, against lot No. 8 [describing the real estate].

"It is further ordered by the undersigned that unless said defendants, James W. Cole, Philla Olds Cole, Wm. T. Cole, and the heirs of Robert S. Cole, deceased, be and appear at the next term of this court to be holden at the Court House in the city of St. Louis, Missouri, on the first Monday of June, 1907, and on or before the 6th day thereof plead to said petition, the same will be taken as confessed and judgment rendered as prayed," etc.

The petition in the tax suit in so far as concerns these persons clearly follows the requirements of Section 580, by alleging under oath that Robert T. Cole, one of the three owners of the lots in controversy, was dead, and that his unknown heirs had inherited his said interest therein, and upon the filing of the petition the court issued the order of publication before set out, which conforms to all the requirements of the statute, and recites all of the allegations in relation to the interest of said unknown heirs, viz: that they had inherited the lots from their deceased father, Robert T. Cole.

The sufficiency of this order has been squarely approved by this court in the case of Hambel v. Lowry, 264 Mo. 168, and that of Fleming v. Tatum, 232 Mo. 678.

We are therefore of the opinion that the order of publication was valid and that the finding and judgment of the circuit court in favor of these parties was erroneous for the reasons stated.

We, therefore, reverse the judgment of the circuit court as to James W. Cole, and to Philla Olds Cole, his widow, and James Gilbert Cole, his son, and as to William T. Cole; this we do on the appeal of the

plaintiffs; and for the reasons stated in paragraph eight of this opinion we reverse the judgment of the circuit court as to Anna E. Sands, Sarah J. Ridpath, and Mary Cole Palmer; this on the cross-appeal of the Company.

The cause is therefore remanded to the circuit court with directions to it to enter judgment for the respective parties in conformity to the views herein expressed.

PER CURIAM.—The foregoing opinion of *Woodson, J.*, is adopted as the opinion of Court in Banc. *Bond, C. J.*, concurs in a separate opinion, in which *Blair, Walker* and *Graves, JJ.*, concur; *Faris, J.*, concurs in separate opinion, in part, and dissents in part, in which *Williams, J.*, concurs.

BOND, C. J. (concurring.)—I concur in the learned majority opinion in this case and the result thereof, except in what is said in paragraph six, to-wit: "It is elemental that a valid judgment cannot be rendered upon a petition which does not state facts sufficient to constitute a cause of action; this is because the court acquired no jurisdiction of the subject-matter and such a judgment will be treated as a nullity *even in a collateral proceeding.*" (Italics ours.)

That the judgment of a court of general jurisdiction having the parties to the controversy before it and having power to determine the class of cases for which relief is prayed, is not void because of the failure of the petition to state a cause of action, and is not, for that reason, open to a collateral attack, is a proposition established in this State, and sustained by the overwhelming weight of authority elsewhere. The failure to state any cause of action is a non-waivable defect upon review of a judgment by appeal or error or in a direct attack made upon it. But it does not deprive the court of its jurisdiction of the class of cases to which the suit in question belongs and it does not ren-

der its judgment open to any form of *collateral* attack thereon.

Said RAY, J., in Dollarhide v. Parks, 92 Mo. 1. c. 188: "But even if the petition failed to state a cause of action, yet being amendable, the judgment thereon is not a nullity; nor can its validity, or the rights of purchasers thereunder, be attacked in a collateral proceeding like this."

Said BRACE, J., in speaking of the conclusiveness of a judgment of a court having jurisdiction of the parties and the subjects of controversy between them: "It goes without saying that such judgment is binding and conclusive upon the parties and cannot be impeached for any defect in pleadings or proof, and that in a suit upon it the sufficiency of the petition on which it was rendered, or the merits of the judgment, cannot be inquired into. [2 Black on Judgments, secs. 970, 971; 2 Freeman on Judgments, sec. 435.] This appeal is entirely without merit and the judgment of the circuit court will be affirmed without damages." [Holt Co. v. Cannon, 114 Mo. 1. c. 519.]

Said SHERWOOD, J., in discussing the force of a judgment in an attachment suit: "Whether a complaint does or does not state a cause of action, is, as far as concerns the question of jurisdiction, of no importance; for, if the complaint states a case belonging to a *general class over which the authority of the court extends*, there is jurisdiction and the court has power to decide whether the pleading is good or bad [citing cases]. In all such cases collateral attack on the judgment rendered is altogether inadmissible." [Winningham v. Trueblood, 149 Mo. 1. c. 580-1; expressly affirmed by Fox, J., in Tube Works Co. v. Ice Machine Co., 201 Mo. 1. c. 58.]

Said this court also, In Banc, in Rivard v. Railroad, 257 Mo. 1. c. 168: " A court is possessed of jurisdiction when it is permitted by the policy of the law to hear and determine cases of the same nature as the one with respect to which the complaint is made, and where it

has jurisdiction of the persons of the parties to the suit. The judgment of the trial court lacking either of those essentials is open to any form of attack. It follows that the judgment of a court of general jurisdiction with the parties before it and with power to grant or refuse relief in the case presented, though contrary to law as expressed in the decisions of the Supreme Court or the terms of a statute, is at most only an erroneous exercise of jurisdiction and as such is impregnable to an assault in a collateral proceeding.''

In strict accordance with the rule thus established is Jarrell v. Laurel Coal and Land Co., 75 W. .Va. 752, fully annotated in L. R. A. 1916 E, pp. 312, 316, where the annotator says: ''When the general character of a judgment is such that its subject-matter falls within the general jurisdiction of the court that enters it, a collateral attack cannot be made thereon even though the pleadings may be defective. And it is not subject to collateral attack even though there was no cause of action stated in the pleadings.'' That statement of the law is supported by cases cited under note 4, p. 317, of the same volume.

For the foregoing reasons I am constrained to dissent from the above excerpt from the learned majority opinion; but as the view expressed in that paragraph is not essential to the result reached, I concur in all other respects with the views and result reached in the majority opinion. *Walker, Blair* and *Graves, JJ.*, concur in this opinion.

FARIS, J. (concurring except as to paragraphs VI and VII.)—I do not concur in the view that William T. Cole may attack collaterally the judgment rendered against him in 1907, in this proceeding, for that the petition in the former action did not specifically describe the precise nature and extent of his interest. Neither do I agree that Philla Olds Cole may so attack this judgment, but her interest was saved to her for other reasons set forth in the majority opinion. I con-

cede that this petition could have been attacked col-laterally if it had not properly described the land. Because no lien could have been adjudged against the land without such correct description thereof in the petition. [Brown v. Chaney, 256 Mo. 219; O'Day v. Mc-Daniel, 181 Mo. 529; Dunavant v. Cooperage Co., 188 Mo. App. 83; Bell v. Johnson, 207 Mo. 281.] But here the land was correctly described. Likewise, in the anal-ogous case of actions to foreclose the lien of the State for taxes, the petition must state the years for which the taxes sued for are due. [Cooper v. Gunter, 215 Mo. 563; Bland v. Windsor & Cathcart, 187 Mo. l. c. 131.] This is so because the statute requires it to be done. [Sec. 9303, R. S. 1899.]

But where the defendants are in court by proper service, constructive or personal, and jurisdiction has attached by a proper description in the petition of the land on which it is sought to fasten the lien, and by a compliance with all of the statutory requirements (if any such there be) as to the allegations of such peti-tion, the judgment foreclosing a tax-lien is just as im-mune to collateral attack as is any other judgment. [Tooker v. Leake, 146 Mo. l. c. 430; Crossland v. Ad-mire, 149 Mo. l. c. 656; Parker v. Burton, 172 Mo. 85; Cummings v. Brown, 181 Mo. 711; Kelly v. Murdagh, 184 Mo. 377; Land Co. v. Land & Cattle Co., 187 Mo. l. c. 435; Gibbs v. Southern, 116 Mo. 204; Evarts v. Lumber Co., 193 Mo. l. c. 448.] Conceding the rule contended for in the majority opinion to the extent above set forth, I do not agree that the petition here attacked was defective in any jurisdictional respect. Whether a petition in an action in a court of general jurisdiction is, or is not, immune to collateral attack depends in the last analysis upon whether such peti-tion is such as to confer jurisdiction upon the court. [15 R. C. L. 841, and cases cited.] If the court has jurisdiction its judgment ceteris paribus cannot be at-tacked collaterally. While there is a difference in the degree of immunity against collateral attack as be-tween special actions, such as suits to foreclose liens

for either special or general taxes, and those actions which were known to the common law; yet barring a failure to have the *res*, that is, the land, in court, and a failure to follow express statutory requirements, I do not think any greater immunity against collateral attack inures in one of these classes of actions than exists in the other. [Wellshear v. Kelly, 69 Mo. 343; Brown v. Walker, 85 Mo. 262.] That judgments in actions proceeding according to common law are immune from collateral attack (except as to an exception not now confronting us—Reynolds v. Stockton, 140 U. S. 254), I think is settled both by the decided cases and by the text-books. [15 R. C. L. 841; 2 Black on Judgments, 970; 2 Freeman on Judgments, 435; 23 Cyc. 1055; Holt County v. Cannon, 114 Mo. l. c. 519; Yeoman v. Younger, 83 Mo. 424; Hardin v. Lee, 51 Mo. 241.] If all the above premises are well taken I cannot agree that the averment of the petition, to-wit: "that William T. Cole and Philla Olds Cole, defendants herein, claim some interest in each of the within described tracts of land, and that plaintiff makes said parties defendants that they may set up whatever rights and interests they may have," was upon this phase of the petition so insufficient as to render the petition bad on collateral attack.

For these reasons I concur as to all that is said in the majority opinion except what is said in paragraphs VI and VII, as to the interest of William T. Cole, to which I dissent. *Williams, J.,* concurs in these views.