G. A. SIDWELL and AUGUST SANDERS v. NATHAN L. KASTER and LEE KASTER, Appellants—No. 21,851.

G. A. SIDWELL and AUGUST SANDERS, Appellants, v. NATHAN L. KASTER and LEE KASTER— No. 21,850.

Division One, July 11, 1921.

1. **DEED OF TRUST: Suit to Foreclosure: Trustee as Party.** To a suit brought against the guardian and curator to foreclose a deed of trust executed by an insane person, the trustee is not a necessary party, and a failure to make him a party in no manner affects the validity of the sale.

2. ———: ———: **Wife as Party: Waiver.** If the divorced wife of the insane mortgagor was a necessary party to a proceeding brought against his guardian and curator to foreclose a deed of trust, the defendant should by answer or demurrer have raised the point that she was a necessary party, and having failed to do so waived the defect.

3. **FORECLOSURE SALE: Conspiracy Not to Bid: Inadequacy of Price.** In a suit to quiet title, brought by the purchaser at a sheriff's sale of land worth $100 to $125 per acre, and another who had purchased after the sale and paid a part of the purchase price, against the mortgagor who claims the foreclosure proceeding was void, it will not be held that there was a conspiracy between the purchaser at the sheriff's sale and the person to whom he subsequently sold that the buyer would not bid at said sale, there being no evidence that he would have bid or intended to bid had there been no agreement to buy, and there being evidence that he could not get a clear title because of the outsanding dower of the judgment debtor's wife, who by his fault had not been impleaded with him in the foreclosure proceeding. Nor under such circumstances will it be held that the price of $68.75 per acre paid at the sheriff's sale was inadequate, the wife's dower not being included.

4. **CAUSE OF ACTION: Jurisdiction.** The mere failure of a petition to state a cause of action does not deprive the court of jurisdiction.

5. **JURISDICTION: Suit Against Insane Person.** The probate court does not have exclusive jurisdiction of suits against insane persons; the circuit court also has jurisdiction of suits founded on claims against an insane person, whether they arose before or during guardianship. [Disapproving Johnson v. Kaster, 199 Mo. App. 501.]

6. **———: Judgment Against Guardian: Suit Against Restored Ward: Collateral Attack.** Where judgment has been obtained in the probate court against the guardian of an insane person, and before payment such person is adjudged restored to his right mind, the creditor may bring suit in the circuit court against such restored person for the amount of his claim and obtain judgment against him; for by the express words of the statute where an insane person is adjudged restored to his right mind, the administration upon his estate in the probate court immediately ends, and the jurisdiction of that court over him and his estate is terminated, and he is subject to suit on any valid claim the same as any other person. And the fact that the petition for judgment in the circuit court recited an allowance by the probate court against his guardian on the same claim while he was yet insane, and asked for judgment for the amount of the allowance with interest from its date, alleging that said allowance constituted an indebtedness of the defendant, did not deprive the circuit court of jurisdiction of the suit, or render the judgment invalid, for whether the facts stated constituted a cause of action was a question for the circuit court to decide, and in a collateral proceeding that question is immaterial and the ruling at most erroneous, for the failure of a petition to state a cause of action does not affect jurisdiction. And in a suit by a purchaser under said judgment to quiet title brought against the defendant therein, said judgment cannot be held to be invalid on the theory that the allowance in the probate court was a judgment *in rem* against the defendant's estate and the judgment in the circuit court was one *in personam* against him personally. [Disapproving Johnson v. Kaster, 199 Mo. App. 501.]

7. **APPEAL FROM ERRONEOUS JUDGMENT: No Supersedeas: Execution: Title of Purchaser.** Where the judgment of the circuit court in an action for debt was for plaintiff and was not void, but only erroneous, and on writ of error without a *supersedeas* staying execution was reversed, but before said writ issued execution was issued and levied on defendant's land, the purchaser at such sale, if a stranger to the proceeding, takes the title, which is in no way impaired by such reversal.

Appeal from Schuyler Circuit Court.—*Hon. N. M. Pettingill,* Judge.

AFFIRMED (*in part*); REVERSED (*in part*).

*Higbee & Mills, Rolston & Rolston* and *Campbell & Ellison* for appellant in No. 21850.

(1) A circuit court is a court of general jurisdiction and has exclusive original jurisdiction in all civil cases not otherwise provided for. Art. 6, sec. 32, Mo. Constitution. (2) A judgment rendered by a court having jurisdiction of the subject-matter, from which no appeal has been taken, is binding and conclusive and cannot be impeached for any defect in pleading or proof. In a suit upon such a judgment the sufficiency of the petition on which it is rendered cannot be inquired into. Holt Co. v. Cannon, 114 Mo. 514. A judgment cannot be collaterally attacked for want of jurisdiction because the petition does not state a cause of action, since, if it states a case belonging to the general class over which the authority of the court extends, jurisdiction is conferred. Winningham v. Trueblood, 149 Mo. 572; Cole v. Parker, 207 S. W. 766. (3) When a party to an action, being fully apprised of his rights, suffers judgment to go against him when he might, by the exercise of reasonable diligence in making his defense, prevent a recovery, he should not be allowed in any subsequent proceedings to reagitate questions which either were, or else could have been, adjudicated at the trial. Smith v. Kiene, 231 Mo. 233. (4) The Fogle judgment is not void, and is therefore not subject to collateral attack. Authorities under Point 2; Potter v. Whitten, 161 Mo. App. 127; McQuillin's Mo. Practise, sec. 911. (5) Defendants' answer does not tender an issue. The allegation that the execution

sale under the Fogle judgment is void is a mere conclusion.

*J. H. Whitecotton, A. D. Morris, J. W. Joyne* and *Lozier & Morris* for respondents in No. 21850.

'The Fogle judgment is absolutely void because the Schuyler Circuit Court had no jurisdiction over the subject-matter of the action and the whole record so shows, and it may be attacked collaterally. Fogle v. Kaster, 212 S. W. (Mo. App.) 565; Johnson v. Kaster, 199 Mo. App. 501; Brown v. Chadwick, 79 Mo. 587; Moody v. Peyton, 135 Mo. 491; Black v. Black, 34 Pa. St. 354; Chandler v. Dodson, 52 Mo. 130; Art. 6, sec. 34, Mo. Constitution; Sec. 4056, R. S. 1909; 23 Cyc. 1059, 1060, 1073, 1074, and 1087; 17 Cyc. 1307-8; Works on "Courts and Their Jurisdiction," sec. 26, p. 169; Smith v. Black, 231 Mo. 691; Draper v. Bryson, 17 Mo. 83; Heard v. Sack, 81 Mo. 616; Turner v. Edmonston, 210 Mo. 428; 15 R. C. L. p. 895, sec. 374; 10 R. C. L. p. 1335, sec. 128; Railroad v. Lowder, 138 Mo. 538; Russell v. Grant, 122 Mo. 180; Adams v. Cowles, 95 Mo. 507.

*John T. Morris, A. D. Morris, J. W. Joyne* and *J. H. Whitecotton* for appellant in No. 21851.

(1) The court under the pleadings and statute had the right to "accord full and complete relief, whether legal or equitable," to all the parties and to each of them as fully as the court could do in any proceeding that could have been brought by any of the parties. Sec. 253, R. S. 1919; Ball v. Woolfolk, 175 Mo. 285; Huff v. Land Co., 157 Mo. 65; Titus v. Dev. Co., 268 Mo. 239; Talbert v. Grist, 108 Mo. App. 499; Powell v. Crow, 204 Mo. 481. (2) Where there is inadequacy of price coupled with evidence of unfairness or fraud an execution sale should

289 Mo.—12

be set aside. Walker v. Mills, 210 Mo. 690; Ayers v. Blair, 26 W. Va. 558; 17 Cyc. 1278; Roer on Judicial Sales (2 Ed.), p. 406, sec. 1087. (3) A bill in equity to set aside an execution sale when the grounds upon which the sale is sought to be set aside are not apparent from an inspection of the proceedings as in this case, will be sustained. 17 Cyc. 1282; Abbey v. Dewey, 25 Pa. St. 416; Philips v. Benson, 161 Pa. St. 421; Underwood v. Mc-Ough, 23 Grat. (Va.) 427. (4) The law will not tolerate any influence likely to prevent competition at a judicial sale, and it accords to every debtor the right and opportunity to a fair sale and to get a full price for his property. Cocks v. Izard, 7 Wall. (U. S.) 559; Underwood v. McVeigh, 23 Gratt. (Va.) 428. (5) The court in an equity suit on appeal will consider all the testimony and direct such judgment as the conscience of the court will approve disregarding the findings and judgment of the trial court below.

*Campbell & Ellison, Higbee & Mills* and *Rolston & Rolston* for respondents in No. 21851.

(1) There is no defect of parties. Sec. 1970, R. S. 1919; Utter v. Sidman, 170 Mo. 284. (2) The defense is a collateral attack and cannot be maintained. Lieber v. Lieber, 239 Mo. 1. (3) Appellant by answer seeks to retain the fruits of the sale while in argument alone does he, by his attorneys, offer rescission. To rescind would be a condition precedent. Delpine v. Lume, 145 Mo. App. 549; Corby v. Bean, 44 Mo. 379, (4) The offer by attorney in argument cannot broaden the issues by the pleadings and is not binding on appellant. The judgment asked by appellant in the pleadings is cancellation of the note and the deed. Davidson v. Davidson, 249 Mo. 474. (5) A sale under execution, pending appeal where no appeal bond is given, is valid. Sec. 1473, R. S. 1919; Burgess

v. O'Donoghue, 90 Mo. 302. (6) Availing one's self of a legal right "such as proceeding to collect a valid judgment," is not fraudulent. Nations v. Pulse, 175 Mo. 94. (7) Appellant's answer concedes Sanders' title. Appellant, therefore, has no interest in the result of this case.

SMALL, C.—Appeal from Circuit Court of Schuyler County.

Suit to quiet title to one-hundred and sixty acres of land, and also forty acres of land adjoining thereto, in Section 2, Township 64, Range 15, in said county.

The petition avers: That in February, 1918, the plaintiff Sanders became the owner in fee of said lands, and afterwards and on the same day entered into a contract to sell and convey said lands to his co-plaintiff. That his co-plaintiff has paid part of the purchase price, and a part of said purchase price is unpaid, and the deed has not yet been executed. That there is an agreement between said plaintiffs that, upon payment of said purchase money, deed will be executed. That defendants claim some right or interest in said lands, and that they are entitled to the possession thereof, but that they have no such right nor interest. Plaintiffs pray that the respective titles be defined and adjudged, together with the right of possession thereof.

The answer, besides a general denial, sets up that the plaintiffs claimed the one-hundred and sixty acres under an execution sale in foreclosure proceedings against defendant Nathan L. Kaster, which defendants say should be set aside, because of inadequacy of price paid by the plaintiff Sanders, brought about by reason of a conspiracy between the plaintiffs and others to prevent bidding at such sale, and by plaintiff Sanders purposely failing to make the trustee in the deed of trust, and the wife of said Kaster, parties to such foreclosure. That the plaintiffs claim title to the forty acres under

an execution sale in the case of Fogle against the defendant, Nathan L. Kaster, which execution sale was absolutely void, because the court rendering the judgment had no jurisdiction, and that it was also void for inadequacy of price, and conspiracy between the plaintiffs and others to suppress bidding. Other minor matters affecting such sale are also alleged, which will be noticed in the opinion. The sales of both tracts were made on the same day, February 11, 1918.

The reply put the matters alleged in the answer in issue.

Plaintiff Sanders testified in substance as follows: That both the forty-acre and one hundred and sixty-acre tracts were sold by the sheriff on the same day, February 11, 1918, while the same assemblage of bidders was present. Witness did not recollect that anyone made the statement at the sale, that there would be a defect in the title. He talked about selling to plaintiff Sidwell the same day he bought it. Had no previous agreement with him. Talked over prices. If he bought it, there was no price set. Sidwell was at the sale. Does not know why Sidwell did not bid. Does not remember whether he said he would give title to it.

"Q. Sidwell stood at your side while you bid, and as soon as it was knocked off to you you went over to an office here in Lancaster?—A. Yes, sir, I sold it. I didn't see him right there when I bid it in. Don't remember whether we walked away together.

"Q. You know the reason Sidwell didn't bid? A. They just sold Kaster's interest. I understood I wasn't getting good title to a part.

"Q. You understood there was an outstanding title? A. I don't understand.

"By Mr. Campbell: Nathan Kaster had been married and his wife had secured a divorce? A. The way I understood it, they sold Nate Kaster's interest in that land, and that is what I bought. My daughter, Nate

Kaster's former wife, wasn't present at the sale. There was no arrangement before the sale between me and my daughter and Sidwell as to the matter of the purchase and any dower or interest she might have. Don't remember of any talk between Sidwell and myself about my daughter's title. She had not agreed with either of us to join in conveying the land to Sidwell, if I purchased it. Attorney Rolston prepared the contract with Sidwell. Don't remember anything about talking with him before the sale. Rolston was not my lawyer, he was representing Sidwell. I don't know what the land value really was. I was the only bidder.

"Q. At the time you bid, you didn't know what it was worth—$5 or $50? A. Or a hundred."

D. Z. Branziger testified for defendants: Was present at the sale. Sanders and Sidwell were standing together at the time of the sale. About a week before the sale, Sidwell told me that he had been to see Sanders and had made arrangements with Sanders to buy it. He said the sheriff was selling all the right that Kaster had in his land. The land was then reasonably worth $100 per acre. It is now worth $125 per acre. Saw Sanders and Sidwell together right after the sale. They were talking about the sale of the land. The next day Sidwell told me Sanders raised $2.50 an acre over what he had agreed to. I am acquainted with the value of the land. My land is within one-fourth of a mile of it."

Charles Smith, for defendant, corroborated Branziger as to value of land and as to Sanders and Sidwell being together at the sale.

James Ewing, for defendant, testified, that the land was worth $100 per acre at the time of sale.

Defendant, Lee Kaster, testified: That he was the son of defendant Nathan L. Kaster. At time of sale, he was in possession as tenant of his father and had been ever since. The land was then worth $100 per acre. His father and his wife were separated.

The sheriff's deed showed that plaintiff Sanders paid $68.50 per acre for the one hundred and sixty acres

at the foreclosure sale, leaving a balance due on his judgment at time of trial of $924.

As to the forty acres, the further additional testimony was given by plaintiff, Sanders. He knew nothing of any trouble except there was a mortgage on the land. He did not know Nate Kaster claimed the court had no right to render the judgment. He bought the property on his own judgment and on what Fogle said that the sale would pass good title. Never read the judgment. Had nobody examine it before he bought the land. They said the title was good and would have to give possession right away. Witness paid $2,000 for it, that is all he thought it was worth. He did not know when he bid that he would sell it for $77.50 per acre. Sidwell said, if witness got it, he (Sidwell) would like to have it, but the price was not stated until after witness bought it.

"Q. Wasn't it the understanding that Sidwell wouldn't bid on it, if you did? A. I don't know, I don't remember. Can't say why Sidwell stood right by me and didn't bid on it. Couldn't say it was within less than an hour after I bid on it that I sold it to Sidwell. I expect it was two hours. If I bought the land, I was to sell it to Sidwell, if we could agree on a price. There were others that wanted to buy it. Don't remember whether I had agreed to sell it to anyone else before the sale."

Charles Smith, for defendant, testified: That he was one of the appraisers under the Fogle "judgment" in setting off homestead, and appraised the forty acres at $75 per acre. He thought they made a reasonable appraisement, but he always did say it was reasonably worth $100. He also testified that there was something said about a mortgage at the time of the sale, a thousand-dollar mortgage, which covered the one hundred and sixty as well as the forty acres.

The record in the Fogle v. Nathan L. Kaster case, under the execution in which the forty acres were sold

by the sheriff and purchased by the plaintiff, Sanders, was introduced in evidence. The petition was as follows:

"In the Schuyler County Circuit Court,
"October Term, A. D. 1917.
*"State of Missouri, County of Schuyler—ss.*
"C. C. Fogle and E. E. Fogle, composing the firm of Fogle & Fogle, Plaintiffs,

v.

"N. L. Kaster, Defendant.

"Come now the plaintiffs in the above entitled cause and state that, at all the times hereinafter mentioned, they were and still are partners in business under the style and firm name of Fogle & Fogle.

"And for their cause of action against the defendant state that, by the orders and judgments of the Probate Court of Schuyler County, Missouri, made on the 30th day of June A. D. 1913, and recorded in the probate records of said county in Volume 10, at pages 472, 473 and 474 thereof, this defendant was duly adjudged of unsound mind and incapable of managing his affairs, and said probate court, by its said orders and judgments, appointed and constituted one John Sloop as the guardian and curator of defendant, and said John Sloop thereafter duly qualified and acted as such guardian and curator until the 7th day of June A. D. 1916, as hereinafter mentioned.

"That while said John Sloop was the guardian and curator of defendant and acting as such as aforesaid, and on the 20th day of September, 1915, in an action in said probate court wherein these plaintiffs were demandants against the estate of Nathan L. Kaster (this defendant), an insane person, a judgment was by said probate court duly given and made in favor of these plaintiffs and against John Sloop, guardian and curator of Nathan L. Kaster, insane, defendant, for the sum of $570 and for the costs, to be levied of the property of the said Nathan L. Kaster insane, in the hands of said guardian and curator to be administered, and

said judgment was by said probate court classified and ordered placed in the fifth class of demands; that a duly certified transcript of said judgment is herewith filed and marked 'Exhibit A.'

"That thereafter, by the orders and judgments of said probate court made on the 5th day of April A. D. 1916, recorded in the probate records of Schuyler County, Missouri, in Volume 11, at page 487 thereof, this defendant was adjudged of sound mind and capable of managing his affairs, and said guardian and curator was ordered to make his final settlement at the next regular term of said probate court; that said guardian and curator thereafter filed his final settlement with said probate court, and said court, by its orders and judgments made on the 7th day of June A. D. 1916, recorded in the probate records of said county in Volume 11, at page 515, thereof, approved said final settlement and discharged said guardian and curator.

"That the aforesaid judgment in favor of these plaintiffs yet remains a valid and subsisting judgment and the same is wholly due and unpaid; that by reason of the premises the defendant owes and stands indebted to the plaintiffs in the sum of five hundred and seventy dollars, with interest thereon from the 7th day of June A. D. 1916, at the rate of six per cent per annum until paid, for all of which plaintiffs pray judgment against defendant and for costs of this action.

"FOGLE & FOGLE, Plaintiffs."

Defendant was duly served with summons, but made no appearance, and judgment was rendered by default on October 17, 1917, at the regular October term of said court, in favor of the plaintiffs, for $616.55. Thereafter, October 30, 1917, the execution under which plaintiff Sanders purchased the land was issued. The sheriff's deed on this sale was regular on its face and conveyed the land to plaintiff Sanders. On April 5, 1916, said N. L. Kaster was duly adjudged to be restored in mind.

After plaintiff's purchase at execution sale and in due time, said defendant Kaster sued out a writ of error in said Fogle Case to the Kansas City Court of Appeals, which reversed the judgment. [Fogle v. Kaster, 212 S. W. 565.]

The foreclosure suit was originally brought in Schuyler County by said Sanders, as plaintiff, against John Sloop, guardian and curator of N. L. Kaster, an insane person, and said N. L. Kaster, the 16th day of March, 1916. The defendants filed answer, setting up that at the time the note and deed of trust were given, Kaster was insane, and the note was without consideration. Afterwards, defendants took a change of venue to Putnam County, where plaintiff filed reply, denying matter set up in answer, and where judgment on the note sued on, and forclosing deed of trust on said one hundred and sixty acres, was rendered on November 28, 1917. Motions for new trial and in arrest were filed and consideration thereof continued until the April term, 1918. On December 8, 1917, after the adjournment of the regular November term, plaintiff caused a special execution to be issued directed to the Sheriff of Schuyler County, which was to him delivered on December 15, 1917, and the land was sold thereunder on February 11, 1918, while said motions were under determination. Afterwards, said motions were overruled and defendant Kaster appealed to this court, where the judgment was affirmed. [Sanders v. Kaster, 222 S. W. 133.] The sheriff's deed in the foreclosure proceedings was regular on its face, and conveyed the one hundred and sixty acres to the plaintiff Sanders.

The court found for the plaintiffs, as to the one hundred and sixty acres, and for defendants as to the forty acres. Both parties duly appealed to this court, where their appeals were consolidated.

I. First, as to the one hundred and sixty acres. The fact that the trustee was not made a party to the foreclosure proceeding, in no manner affected its validity,

and could have had no just bearing on the sale,
**Foreclosure Sale.** because, we hold, that he was neither a necessary nor proper party. We also hold, that it was defendant's own fault that his wife was not a party defendant, in that, if she was a proper party, defendant should have raised that question by answer or demurrer, and failing to do so, he waived the defect, if any there was. [Sanders v. Kaster, 222 S. W. l. c. 135.] If these facts affected the price for which the land was sold, defendants have no right to complain thereof.

Nor are we impressed with the contention that there was a conspiracy between the plaintiffs, that plaintiff Sidwell was not to bid. There is no evidence that he would have bid or intended to bid, had he made no agreement to buy from Sanders. He could not get a clear title, because of the outstanding dower in Kaster's wife, which we have seen was Kaster's fault for not having her impleaded with him as defendant in the case. Plaintiff Sanders testified that Sidwell did not bid, because he could only buy Kaster's interest. For the same reason, we are not impressed with the insistence that the property sold for any inadequacy of price. Mrs. Kaster's dower not being included in the sale, but only the interest of Kaster, $68.50 per acre, the price paid by plaintiff Sanders, was a fair price, under all the evidence, for the interest purchased by Sanders. It is far from being a price so inadequate as to warrant a court of equity in setting aside the sale.

We rule, that the sale to plaintiff Sanders, of the 160 acres was valid in all respects.

II. As to the forty acres. The plaintiff Sanders paid $50 per acre therefor. The evidence tends to show it was subject to $1,000 mortgage. This would make the price paid equivalent to $75 per acre for Kaster's interest therein, subject to his wife's dower. This was a fair price for the interest in the property sold.

What we have just said, with reference to the conspiracy claimed by appellant between plaintiffs, that

Sidwell should refrain from bidding on the one hundred and sixty acres, also applies to the same contention as to the forty-acre tract.

III.   It is earnestly contended by learned counsel for defendants, that the Fogle judgment under the execution on which plaintiff Sanders purchased said forty acres was absolutely void, because the petition in that case shows on its face that the circuit court had no jurisdiction, and jurisdiction of the subject-matter was exclusively vested in the probate court.   The opinion of the Kansas City Court of Appeals, in that case, was delivered by BLAND, J., and after reciting the petition, was as follows (212 S. W. 565):

Jurisdiction: No Cause of Action.

"We think that the petition fails to state a cause of action.   It sues upon a judgment rendered by the probate court, which is a judgment *in rem* against the estate (Moody v. Peyton, 135 Mo. 482, l. c. 491, 36 S. W. 621, 58 Am. St. Rep. 604), and attempts to make this judgment a basis of judgment *in personam* against the defendant.   This cannot be done.   [Johnson v. Kaster, 199 Mo. App. 501, l. c. 503, 204 S. W. 196.]   An allowance in the probate court against the estate of an insane person cannot be made a personal judgment against such person when restored to sanity.   [Johnson v. Kaster, supra; Brown v. Chadwick, 79 Mo. 587.]   The judgment is reversed."

As we interpret the language of the learned court, it rules that the petition stated no cause of action, because the claim sued on was not a personal judgment against the defendant Kaster, but only a judgment *in rem* against his estate in the hands of his former guardian.   The decision does not, therefore, hold that the circuit court had no jurisdiction, unless the failure of the petition to state a cause of action deprives the court of jurisdiction.   But this is not the law.   In Cole v. Parker-Washington Co., 276 Mo. 220, 207 S. W. 749, l. c. 766,

the majority of Court in Banc announced the rule in such cases, as follows:

"That the judgment of a court of general jurisdiction, having the parties to the controversy before it, and having power to determine the class of cases for which relief is prayed, is not void, because of the failure of the petition to state a cause of action, and is not, for that reason, open to a collateral attack, is a proposition established in this State, and sustained by the over-whelming weight of authority elsewhere." Citing in support of its conclusion: Dollarhide v. Parks, 92 Mo. 1. c. 188; Tube Works v. Ice Machine Co., 201 Mo. 58; Rivard v. Railroad, 257 Mo. 168; Jarrell v. Laurel Coal & Land Co., 75 W. Va. 752, fully annotated in L. R. A. 1916E, pp. 312, 316. The court also quoted the following from Winningham v. Trueblood, 149 Mo. 1. c. 580, 581: "Whether a complaint does or does not state a cause of action is, as far as concerns a question of jurisdiction, of no importance; for if the complaint states a case belonging to a *general class over which the authority of the court extends,* there is jurisdiction, and the court has power to decide whether the pleading is good or bad (citing cases). In all such cases, collateral attack on the judgment rendered, is altogether inadmissible."

So that, we hold. that the Kansas City Court of Appeals in the Fogle Case did not hold the circuit court had no jurisdiction and its judgment was void for that reason, but simply that the petition in that case did not state a cause of action for a personal judgment against the defendant Kaster.

IV.  But it is earnestly contended that one of the cases cited by the learned Court of Appeals in the Fogle Case, namely, Johnson v. Kaster, 199 Mo. App. 501, in which the petition was the same as in the Fogle Case, does hold that, in such cases, the circuit court had no jurisdiction, because it was, in effect, an attempt to enforce the judgment of the

<small>Suit in Circuit Court.</small>

probate court by execution from the circuit court, which would, in effect, remove the administration of the insane person's estate from the probate court, and that, therefore, the circuit court had no jurisdiction of the subject-matter. We cannot agree to this conclusion reached by the court in that case. The probate court has not exclusive jurisdiction in proceedings against insane persons. Section 514, Revised Statutes 1909, is as follows:

"In all actions commenced against such insane person, the process shall be served on his guardian; and on judgment against such insane person, or his guardian, as such, the execution shall be against his property only."

In Frost v. Redford, 127 Mo. l. c. 498, it was held that under Section 5544, Revised Statutes 1889, which is in the same language as Section 514, Revised Statutes 1909, just quoted, an insane person, under guardianship, should be sued in the circuit court. The court said, at page 498:

"He continues to be the owner of the property and may sue by his guardian, be sued and defend by his guardian (and) an execution may issue against his property. [R. S. 1889, sec. 5544.] His property rights and rights under the exemption laws were not changed by reason of his being declared insane and placed under guardianship."

Since that case was determined, Section 499, Revised Statutes 1909, was enacted, which requires the property of the insane, ward, if not sufficient to pay all his debts in full, to be prorated among his creditors. But this in no way restricts the jurisdiction of the circuit court to entertain a suit against him. After an insane person is adjudged restored to his right mind, Section 520, Revised Statutes 1909, provides, that: "He shall be discharged from care and custody and the guardian shall immediately settle his accounts and restore to such person all things remaining in his hands belonging or appertaining to him."

So that, when the Fogle suit was brought, as shown by the petition, Kaster had been adjudged restored to his right mind, and the administration of his estate in the probate court was ended and the jurisdiction of that court over him and his estate had terminated. Consequently, he was subject to suit the same as any other person on any valid claims against him.

The case of St. Louis v. Hollrah, 175 Mo. 79, was a suit to recover a personal judgment against an insane person for necessaries, while such person was under guardianship. It was brought in the circuit court. The defense was that the petition stated no cause of action, and the circuit court had no jurisdiction. This court disallowed both contentions. After setting out in its opinion the statutes relating to insane persons and their estates, which statutes were the same as those applicable in this case, the court said (l. c. 84, 85):

"It is well settled law, 'That, if a statute gives a remedy in the affirmative, without containing any express or implied negative, for a matter which was actionable at common law, this does not take away the common law remedy, but the party may still sue at common law, as well as upon the statute. In such cases the statute remedy will be regarded as merely cumulative. But, where a new right or the means of acquiring it are given, and an adequate remedy for violating it is given in the same statute, then the injured parties are confined to the statutory remedy.' [Citing many cases.]

"In order that this act should have the effect contended for by counsel for defendant, of ousting the jurisdiction of the circuit court and vesting the same in the probate court, it must afford not only a remedy but an adequate remedy, and that remedy must be exclusive. It fills none of these requirements. The probate court is a court of limited jurisdiction, possesses only such power as is conferred upon it by statute, and can

exercise its jurisdiction only in the manner prescribed by statute. This act does not confer upon the probate court power to hear, determine and afford adequate relief to a suitor in an action in that court against an insane person. Nor does it provide any method of procedure for that purpose. In fact, instead of providing an exclusive remedy in that court, it provides none at all for such suitor. It is simply a limitation upon his demand, and that limitation does not apply to cases like the one in hand, but is confined to demands against an insane person accruing before the granting of letters of guardianship. There is nothing in this contention.''

From the above language, it is clear, it seems to us, that the circuit court has jurisdiction in suits on all claims against insane persons, whether they arose before or during the guardianship, and that the statutory remedy for proving up claims in the probate court against his estate in the guardianship proceedings is not exclusive and does not exist at all after the insane person is adjudged restored to his right mind, his property returned to him, and the guardian discharged, as stated in the petition in the case of Fogle v. Kaster, supra. The petition in that case, it is true, was not based on the original claim, but on the claim as allowed in the probate court, but it alleged that said allowance constituted an indebtedness of the defendant, for which the plaintiffs prayed judgment as in ordinary cases. Whether the facts stated in said petition constituted a cause of action entitling the plaintiffs to a personal judgment as prayed for, was a question for the circuit court to decide. It had jurisdiction to determine that question. Whether it determined it right or wrong, is not material. If the facts stated did not constitute a personal liability on the part of defendant, the petition, of course, failed to state a cause of action, but this in no way deprived the court of the power,—the jurisdiction—to determine that question. The circuit court had jurisdic-

tion in all actions for personal judgments against formerly insane persons, who had been discharged from guardianship, and was the only court which did have jurisdiction in such cases. Consequently, the judgment in the Fogle case against the defendant Kaster was not an absolute nullity for want of jurisdiction, but at most simply an erroneous judgment.

We, therefore, disapprove what is said in Johnson v. Kaster, 199 Mo. App., supra, as to the circuit court having no jurisdiction in such cases.

V. The judgment in the case of Fogle v. Kaster, not being void, but simply erroneous, the title of the plaintiff Sanders to the forty acres was good. He was a stranger, and not a party, to that proceeding. There was no *supersedeas* staying the execution, and, therefore, the fact that the judgment was subsequently reversed by the Kansas City Court of Appeals in no way impaired his title. [Shields v. Powers, 29 Mo. 315; Vogler v. Montgomery, 54 Mo. 577; Schmidt v. Niemeyer, 100 Mo. 207; Wood v. Ogden, 124 Mo. App. 42.]

*Erroneous Judgment: Reversal.*

We hold, therefore, that the plaintiffs' title to both the hundred and sixty acres and the forty acres is valid, and that they are the owners thereof, as described in the petition, and that the defendants have no interest therein. Consequently, the judgment below for the plaintiffs as to the one hundred and sixty acres is affirmed, and the judgment for the defendants as to the forty acres is reversed and the case remanded with directions to the circuit court to set aside its judgment as to said forty acres, and enter judgment that plaintiffs are the owners of said forty acres, and entitled to the possession thereof, and the defendants have no right nor title thereto, and that plaintiffs recover the possession of said forty acres from defendants, together with monthly rents, at the rate of ten dollars per month, from the 11th day

of February, 1918, until the possession thereof is delivered to them. *Brown* and *Ragland, CC.*, not sitting.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur.