**A. & R. REALTY CO. et al. v. NORTH-
WESTERN MUT. LIFE INS. CO.\***
No. 10986.

Circuit Court of Appeals, Eighth Circuit.
April 9, 1938.

\*Rehearing denied May 4, 1938.

704

Charles P. Woodbury, of Kansas City, Mo. (Paul S. Kelly, of Kansas City, Mo., on the brief), for appellant A. & R. Realty Co.

Sam B. Sebree, of Kansas City, Mo. (Frank P. Sebree, of Kansas City, Mo., on the brief), for appellant Charles Owens.

George J. Winger and Maurice H. Winger, both of Kansas City, Mo. (Winger, Reeder & Barker, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This is a suit in equity brought by the Northwestern Mutual Life Insurance Company against A. & R. Realty Company and Charles Owens to foreclose a deed of trust executed by the realty company to Wilbur E. Hoag, as trustee for the insurance company, covering lot 3, block 17, of Ashburn's addition to the city of Kansas, now Kansas City, and the leasehold interest of the realty company in lot 2, block 17, of said Ashburn's addition. The deed of trust was given to secure a $250,000 loan made by the plaintiff to the realty company evidenced by a promissory note for that amount dated February 1, 1926, and payable $15,000 at the end of five years, $15,000 at the end of seven years, and the remaining $220,000 at the end of ten years, with interest at 5 per cent. per annum, payable semiannually. From a decree of foreclosure and from an order appointing a receiver pendente lite, the defendants have appealed. The facts are, in substance, as follows:

The lots affected by the deed of trust constitute the site of a ten-story office building in Kansas City, Mo., which was owned and operated by the realty company. On September 11, 1925, the realty company applied to the plaintiff for a $250,000 loan, offering as security therefor this building and the lots on which it stands. In its application the realty company represented that it was acquiring the fee title to the lots and that the record title thereto was perfect in it. An examination of the title disclosed

that lot 3 was in fact owned by Charles Owens, and that the realty company had only a leasehold interest in it under a 96-year lease from Owens to Bagby & Co., and that the realty company had a leasehold interest in the adjoining lot 2 under a 99-year lease. On December 12, 1925, Owens conveyed lot 3 to the realty company by warranty deed, subject to the 96-year lease to Bagby & Co. Thereafter, on January 21, 1926, Owens executed a quitclaim deed to the realty company disclaiming any interest in the lease to Bagby & Co. This deed recited that "the entire interest in and to said lease belongs to and is vested in said A. & R. Realty Company absolutely," and that the deed was "made for the sole purpose of correcting the title to said lease and vesting the same wholly in the said A. & R. Realty Company." By these deeds Owens conveyed to the realty company his fee title to lot 3 and his interest as lessor in the lease thereon.

The realty company did not acquire the fee of lot 2. In lieu of a lien upon the fee title to that lot, it agreed to give the plaintiff a lien upon its leasehold interest and a surety bond to insure that it would pay the ground rent under the 99-year lease.

On February 1, 1926, the realty company executed the $250,000 note and deed of trust. The deed of trust provides that upon default in the payment of any portion of the indebtedness secured thereby, the entire indebtedness shall become due at the option of the plaintiff; that the realty company will pay when due all taxes and assessments which may become liens upon the real estate, and that if they are not promptly paid, the plaintiff may pay them and the realty company will repay the moneys advanced therefor with interest at 8 per cent. per annum; that if any suit is brought to foreclose the deed of trust, the realty company consents that "a receiver pendente lite of said real estate and of the rents therefrom may be appointed by the court"; and that the court may allow, in addition to the expenses of prosecuting the suit, a reasonable attorney's fee.

Concurrently with the execution of the deed of trust and as additional security for the loan, the realty company executed an assignment to the plaintiff of a 30-year lease between it and the Pioneer Trust Company, the tenant of a portion of the building covered by the deed of trust. The realty company at the same time assigned to the plaintiff the 99-year lease covering lot 2.

On January 25, 1933, the Pioneer Trust Company failed and was placed in the hands of the commissioner of finance of the state of Missouri for liquidation.

On February 1, 1933, $15,000 of principal and $5,875 of interest became due upon the note secured by the deed of trust. These amounts were not paid when due, and the realty company has in fact made no payments upon the note since August 1, 1932.

As a result of negotiations initiated by the realty company prior to February 1, 1933, it procured from the plaintiff a forbearance agreement. The realty company had made claims against the insolvent estate of the Pioneer Trust Company for rents and damages on account of the breach of the 30-year lease, and it was expected that there might be an early adjustment of these claims. The forbearance agreement entered into on June 15, 1934, was for no definite time, but it recited that plaintiff "has agreed to defer foreclosure of said deed of trust pending definite settlement of claims filed by the A. & R. Realty Company with the Commissioner of Finance for the State of Missouri." By the terms of this forbearance agreement, the realty company was obligated to pay to the plaintiff the proceeds of these claims when and as collected; to furnish monthly operating statements of the building; and to pay monthly to plaintiff "all net income from the building." The agreement contained an assignment to the plaintiff of all rentals of the building as additional security for its loan, with the reservation that the realty company was to collect the rents as long as the forbearance agreement was strictly carried out. The plaintiff agreed to apply all moneys received under the terms of the forbearance agreement upon the indebtedness secured by the deed of trust.

On April 5, 1935, the plaintiff declared the loan due, and on September 19, 1935, it commenced this suit to foreclose. In its complaint it alleged the giving of the deed of trust and other security, the insolvency of the realty company, and the inadequacy of the security for the loan. It also alleged that the realty company had not carried out the terms of the forbearance agreement; that the deed of trust was in default; and that the entire indebtedness was due. It asserted that Owens claimed some interest in lot 3, but that whatever interest he might have was subordinate to the lien of the deed of trust. It prayed for the appointment

of a receiver pendente lite and for the foreclosure of the deed of trust.

The answer of the realty company admitted the giving of the note, the deed of trust, and other security; denied that it was insolvent or that the security was inadequate; set up the forbearance agreement, and asserted its compliance therewith.

The defendant Owens in his answer asserted that Hoag, as trustee, was an indispensable party plaintiff; that the court was without jurisdiction for the reason that, Hoag being a citizen of Missouri, there was no diversity of citizenship. Owens also alleged that lot 3 had belonged to him in fee; that prior to the execution of the deed of trust he had conveyed it to the realty company to enable that company to obtain the $250,000 loan from the plaintiff; that his conveyance was made pursuant to an agreement with the realty company that the lot would be reconveyed to him subject to the lien of the deed of trust; that, by conveying it to be used as security for the debt of the realty company to the plaintiff, he became as to that debt a surety to the extent of his interest in the lot; that it was reconveyed to him by the realty company after the deed of trust was given; that the plaintiff knew of this arrangement and knew that Owen's conveyance of his lot to the realty company was for the purpose of making him such a surety for the loan; and that, with such knowledge and without his consent, the plaintiff entered into the forbearance agreement with the realty company and thereby released his lot from the lien of the deed of trust.

The plaintiff applied for the appointment of a receiver. At the hearing upon its application it developed that there was then due upon the deed of trust a total of $290,-239.85, of which $15,968.74 represented taxes advanced by the plaintiff between September 13, 1934, and September 28, 1935. There was evidence introduced by the plaintiff indicating that the realty company had diverted rentals received from the building to the payment of expenses other than those of operation, and had therefore not complied with the terms of the forbearance agreement. The evidence introduced by the realty company upon this hearing tended to show that it had not diverted rentals or that such diversions as had been made were inconsequential in amount. The theory of the realty company seems to have been that, because the mortgaged property constituted everything it owned, all disbursements made by it should be regarded as expenses of operating the property.

Upon the verified complaint and the evidence adduced at the hearing, the court found that the realty company had not complied with the forbearance agreement, and that the plaintiff was entitled to the appointment of a receiver. The court appointed as receiver the then manager of the building, and appointed as attorneys for the receiver one of the counsel representing the realty company and one of the attorneys for the plaintiff. The receiver was allowed a commission of 5 per cent. upon collections, and the attorneys were to serve without compensation. The court's announced purpose in appointing the receiver was "so that the operation of the company can be conducted under the supervision and control of the court, and the receipts of the company segregated and sequestered."

Upon the trial, it was stipulated that there was due to the plaintiff and unpaid $302,080.54, being $235,000 of principal with interest from August 1, 1932, together with advances for taxes and interest thereon. The plaintiff introduced in evidence the application of the realty company for the loan, the deeds from Owens to the realty company, the note and deed of trust, the assignment of the 99-year lease covering lot 2, the assignment of the 30-year Pioneer Trust Company lease, the surety bond securing the payment of the ground rent of lot 2, the forbearance agreement of June 15, 1934, the evidence taken on the application for the appointment of a receiver, the claims of the realty company against the commissioner of finance of the state of Missouri, and an abstract of title showing clear record title to lot 3 in the realty company at the time the deed of trust was executed.

The realty company offered evidence to show that the value of the real estate covered by the deed of trust was greatly in excess of the mortgage indebtedness. The defendant Owen introduced evidence to sustain the allegations of his answer that he, with respect to his interest in lot 3, was a surety for the loan, that the plaintiff knew of his arrangement with the realty company, and that, with such knowledge and without his consent, it entered into the extension or forbearance agreement with the realty company.

The questions for determination are:

1. Is the trustee named in the deed of trust an indispensable party?

2. Is the order appointing the receiver subject to review, and, if so, was it valid?

3. Was the deed of trust subject to foreclosure?

4. Was Owens, to the extent of his interest in lot 3, a surety, so that the lot was released from the lien of the deed of trust by the forbearance agreement?

5. Were the attorneys' fees allowed by the court for foreclosing the deed of trust so excessive as to constitute an abuse of its discretion?

■ 1. The trustee named in the deed of trust was not an indispensable party.

■ An indispensable party is one who has an interest in the controversy of such a nature that "a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." Carroll et al., Executors v. New York Life Ins. Co., 8 Cir., 94 F.2d 333, 335.

■ The deed of trust in suit is in effect a mortgage. Under the laws of Missouri, a trustee in such a deed of trust takes no title or estate and has no real interest in the property covered by it. Missouri Real Estate & Loan Co. v. Gibson, 282 Mo. 75, 220 S.W. 675; Springfield ex rel. Trust Company v. Ransdell, 305 Mo. 43, 264 S. W. 771. The fee title is in the mortgagor subject to the mortgage or deed of trust. Kennett v. Plummer, 28 Mo. 142; Woods v. Hilderbrand, 46 Mo. 284, 2 Am.Rep. 513; Pease v. Pilot Knob Iron Co., 49 Mo. 124; Dickerson v. Bridges, 147 Mo. 235, 48 S.W. 825; Pence v. Gabbert's Administrator, 70 Mo.App. 201.

The trustee under such a deed of trust is not a necessary party to a foreclosure suit in the state courts of Missouri. Sidwell v. Kaster, 289 Mo. 174, 175, 232 S. W. 1005, 1007. He is a mere agent or instrumentality of the mortgagor and the mortgagee. He has no authority except to sell the property, upon request, to the best possible advantage of his principals. Sherwood v. Saxton, 63 Mo. 78; Charles Green Real Estate Co. v. St. Louis Mutual House Building Co., 196 Mo. 358, 93 S.W. 1111. In this suit the mortgagor and the mortgagee, the real parties in interest, were before the court. The trustee had no real interest in the subject matter of the litigation and is not substantially affected by the decree. He was neither a necessary nor an indispensable party.

■ 2. The order appointing the receiver was not appealable after 30 days from the time it was entered, but is reviewable upon the appeal from the final decree. The entry of the order is assigned as error. Section 129 of the Judicial Code, as amended, 28 U.S.C. § 227, 28 U.S.C.A. § 227, permits an appeal from an interlocutory order within 30 days. Prior to the time that appeals from interlocutory orders were authorized, such orders were only subject to review upon appeal from final decrees. In Marden v. Campbell-Printing-Press & Mfg. Co., 1 Cir., 67 F. 809, 816, this was pointed out, and it was held that the right granted by Congress to appeal from interlocutory orders is a privilege or option, and that, whether that right is availed of or not, the right to appeal from the final decree is not diminished. It would have been more accurate to say that if the right to appeal from the interlocutory order was not availed of, the failure to appeal would not diminish the right to a review of such order upon appeal from the final decree, as is pointed out in Australian Knitting Co. v. Gormly, C.C., 138 F. 92, 103. In Bissell Carpet-Sweeper Co. v. Goshen Sweeper Co., 6 Cir., 72 F. 545, 555, it was held in an opinion by Judge (later Mr. Justice) Lurton that if, upon an appeal from an interlocutory order, the appellate court is required to pass upon the merits of the case, a second appeal from the final decree, which challenges the same interlocutory order can involve only matters affecting such order which have transpired subsequent to the entry thereof, or, in other words, that the appellate court cannot be required to review the same order twice upon the same grounds. The converse of this ruling would be that where no appeal had been taken from the interlocutory order or where, if taken, the appellate court was not required to and did not pass upon the merits of the controversy in deciding the appeal, a subsequent appeal from the final decree could properly challenge the validity of the interlocutory order and invoke a decision upon the merits.

■ The order appointing the receiver, as has already been pointed out, was based upon the verified complaint and certain evidence introduced by the parties. The realty company contends that the showing made by the plaintiff was not sufficient to

708

justify the court in appointing a receiver. We think there is no merit in this contention. The deed of trust contained the agreement of the parties that a receiver pendente lite might be appointed. The failure of the realty company to pay principal, interest, and taxes in accordance with the terms of the deed of trust was, we think, a practical demonstration of its inability to pay its debts as they matured and of the inability of the building to produce sufficient revenue to enable the realty company to meet its obligations. This evidence certainly tended to show insolvency and inadequacy of security. The order appointing the receiver authorized him to take over only the property upon which, either by the deed of trust or by the terms of the forbearance agreement, the plaintiff granted a lien. The plaintiff was not an unsecured creditor as to any of such property, but was a secured creditor.

■■■ 3. The deed of trust was subject to foreclosure. It had been long in default. The forbearance agreement was obviously a temporary arrangement entered into in the hope that the realty company might, by applying upon the loan secured by the deed of trust the moneys that the realty company expected to obtain from the estate of the insolvent Pioneer Trust Company and from rentals, escape a foreclosure. The mortgage indebtedness, instead of being reduced, continued to increase. The realty company, as the court found, did not comply with the terms of the forbearance agreement with respect to paying over net rentals. It treated as net rentals the difference between what it took in and what it spent. To give to the forbearance agreement the effect that the realty company contends for might well defeat any right of the plaintiff to ever foreclose its mortgage and leave it with a permanent investment which would never mature and never be paid. The agreement only required forbearance for a reasonable length of time in any event. Compare Nunez v. Dautel, 19 Wall. 560, 86 U.S. 560, 22 L.Ed. 161; Van Stone v. Stillwell & Bierce Manufacturing Co., 142 U.S. 128, 138, 12 S.Ct. 181, 35 L.Ed. 961; City of St. Charles v. Stookey, 8 Cir., 154 F. 772, 782; Banque Russo-Asiatique v. Dolch, 9 Cir., 3 F.2d 266, 267; Florida Power & Light Co. v. Atlantic, Gulf & Pacific Co., 5 Cir., 38 F.2d 948, 949; Lamborn & Co. v. Log Cabin Products Co., D.C., 291 F. 435, 439.

■■■ 4. Charles Owens loaned lot 3 to the realty company so that it might procure the $250,000 loan from the plaintiff. His agreement with the realty company was that the lot should be reconveyed to him subject to the deed of trust. The lot was so reconveyed to him. He now contends that his arrangement with the realty company made him, with respect to his interest in the lot, a surety for the loan, and that, since the plaintiff either knew or was charged with knowledge of the arrangement which he had with the realty company, the plaintiff released the lot from the lien of the deed of trust when it entered into the forbearance agreement with the realty company.

The court found that the plaintiff had no knowledge of the arrangement between Owens and the realty company with respect to his lot. Unless that finding is to be set aside by this court, it is unnecessary to determine whether, for other reasons, Owens was not a surety. We think that the finding was right and should be sustained.

As showing knowledge on the part of the plaintiff of the arrangement between himself and the realty company, Owens points to the fact that the warranty deed which he gave to the realty company had only a $1 revenue stamp upon it, indicating a consideration of $1,000 or less, and that, before it was recorded, the deed was submitted to counsel for the plaintiff for his approval. Owens also points out that the minute books of the realty company disclosed the arrangement which he had with it with respect to the lot, and that this minute book was examined by counsel for the plaintiff before the loan was completed. He also calls attention to the recording in April, 1926, of the deed reconveying lot 3 to him, and to correspondence between the plaintiff and the realty company disclosing that, before the forbearance agreement was made, the plaintiff had discovered that the realty company was paying ground rent to Owens and protested against such payments being made, whereupon the realty company stopped making them.

The warranty deed from Owens to the realty company was first submitted to the attorney for the plaintiff for approval, and was then recorded by the attorney for the realty company. When the revenue stamp was placed upon it is not disclosed. It would be more reasonable to suppose that

this was done after, rather than before, the deed was approved. Whatever message this stamp carried is not shown to have been delivered to the plaintiff. The recording of the reconveyance to Owens several months after the plaintiff had recorded the deed of trust was not constructive notice to the plaintiff of the arrangement that he had with the realty company. Meier v. Meier, 105 Mo. 411, 16 S. W. 223. The examination which counsel for the plaintiff made of the minute book of the realty company was for the sole purpose of ascertaining whether a resolution prepared by him, authorizing the execution of the note and deed of trust, had been duly adopted. There is no evidence that he ever saw the minutes relating to the proposed reconveyance of the Owens lot. Knowledge of the fact that the realty company had made payments of rentals to Owens after the deed of trust was executed, does not, in our opinion, indicate that the plaintiff knew or was charged with any knowledge that Owens, with respect to lot 3, claimed to be a surety for the loan secured by the deed of trust. The plaintiff, when it made this loan to the realty company, had taken every possible precaution to insure that the deed of trust should be a first lien upon the fee title to lot 3. The deeds which Owens had executed and which were of record informed it, when it took the deed of trust and parted with its money, that he had and claimed no right, title, or interest in lot 3. No rule of law of which we are aware obligated the plaintiff to go further and thereafter make inquiries for the purpose of ascertaining whether Owens might not have retained the interest in this lot which he now claims or some other interest not shown of record. If Owens desired to be regarded by the plaintiff as a surety for the realty company to the extent of his interest in lot 3, it was incumbent upon him to notify the plaintiff that such was his arrangement with the realty company. Otherwise, under his theory of the law, he

had set a trap into which the plaintiff was almost certain to fall.

While knowledge, like any other fact, may be proved by circumstantial evidence, evidence which is consistent with the hypothesis that the plaintiff did not have knowledge of this arrangement between Owens and the realty company and also with the hypothesis that it did have knowledge of the arrangement, was not proof that the plaintiff knew that Owens claimed to be a surety. See Svenson v. Mutual Life Ins. Co. of New York, 8 Cir., 87 F. 2d 441, 443; New York Life Ins. Co. v. King, 8 Cir., 93 F.2d 347, 353; Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720.

5. As has already been pointed out, the trust deed provided for the allowance of a reasonable attorney's fee in case of foreclosure. The realty company contends that the fee fixed by the court was excessive. The record does not disclose that any suggestions were made to the court by the realty company as to what fee would be by it regarded as reasonable. There is some doubt as to whether that question is properly before us, since it apparently was not the subject of controversy in the court below. We should have been better pleased if the court had fixed a lesser fee, but the question as to what fee should be allowed was one which called for the exercise of the discretion of that court, and we are not prepared to say that the allowance was so excessive as to constitute an abuse of discretion. The attitude of the appellants has greatly increased the amount of professional services required in order to procure a foreclosure. The fee allowed is about 3 per cent. of the entire amount involved. The allowance made no doubt represents what the trial court conscientiously believed to be fair and just. Under all of the circumstances, we do not feel called upon to substitute our judgment for that of the trial court.

The decree is affirmed.